FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

15 NOV 23  PM 2: 02

CLERK. U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS. FLORIDA

CODY K. CHILDERS,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )   Case No.
                                     )
FLORIDA GULF COAST                   )
UNIVERSITY BOARD OF TRUSTEES,        )   2:15-CV-722-FtM-99MRM
a Public Body Corporate, RONALD B.   )
TOLL in his official capacity as Provost )
and Vice President for Academic Affairs, )
MITCHELL L. CORDOVA individually     )
and in his official capacity as Dean of the )
College of Health Professions and Social )
Work at Florida Gulf Coast University, )
JOAN GLACKEN individually and in her )
official capacity as Associate Dean of )
Health Sciences in the College of Health )
Professions and Social Work at Florida )
Gulf Coast University,  ERIC SHAMUS )
individually and in his official capacity as )
Chair of the Department of Rehabilitation )
Sciences at Florida Gulf Coast University, )
& ARIE VAN DUIJN individually and in )
his official capacity as Program Director )
of Doctor of Physical Therapy Program at )
Florida Gulf Coast University,       )
                                     )
          Defendants.                )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Cody Childers ("Cody"), through counsel, brings this is complaint

against Florida Gulf Coast University, Dr. Arie Van Duijn "(Dr. Van Duijn), Dr. Joan

Glacken (Dean Glacken), and Dr. Eric Shamus ("Dr. Shamus") and in support thereof

alleges the following on information and belief, seeking injunctive relief and money

damages to redress the Defendants' deprivation of Plaintiff's rights, which are guaranteed under the First and Fourteenth Amendments of the United States Constitution, to wit:

## JURISDICTION AND VENUE

1.      This action seeks to enforce and uphold rights guaranteed under the First and Fourteenth Amendments of the United States Constitution.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution of the United States; under 28 U.S.C. § 1343(a)(3) because it is brought to redress deprivations—effected under color of Florida state laws and regulations—of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4) because it seeks to secure damages and equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; under 28 U.S.C. § 2201(a) because Plaintiff seeks to secure declaratory relief; and under 28 U.S.C. § 2202 because Plaintiff seeks money damages.

3.      This Court has supplemental jurisdiction over Plaintiff's claims against Defendants for defamation and negligence pursuant to 28 U.S.C. § 1367 because such claims arise under the same transactions or occurrences as the claims over which this Court has original federal question jurisdiction.

4.      This Court has the authority to award Plaintiff's attorney fees and costs associated with this action pursuant to 42 U.S.C. §1988 and other applicable law.

5.      Venue is proper in the Middle District of Florida and this division pursuant to 28 U.S.C. § 1391(b), (c) because Florida Gulf Coast University ("FGCU") is

located within this jurisdiction and because all of the claims asserted by Plaintiff arose within the Court's judicial district and division.

6.      Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.      Plaintiff, Cody Childers, is a citizen of the United States and at all times relevant to this action a student of the Doctor of Physical Therapy program at Florida Gulf Coast University ("FGCU-DPT") until he was dismissed from the program on February 20, 2015 by FGCU-DPT faculty and administrators.

8.      Defendant Florida Gulf Coast University Board of Trustees ("FGCU") is a subdivision of the State of Florida created pursuant to Article IX, Section 7 of the Florida Constitution, and enabled by statute as a state constituent university Board of Trustees pursuant to Fla. Stat. § 1001.71 et seq. Florida Gulf Coast University is a state university, pursuant to Fla. Stat. § 1000.21(6)(j). Accordingly, FGCU is vested with all the powers of a corporate body, including: the power to sue and be sued and to plead and be impleaded in all courts of law and equity; and the power to contract. FGCU is vested with the authority to govern its departments and colleges, including the policies and procedures challenged herein that were used to remove Cody Childers from the FGCU-DPT program.

9.      Defendant Ronald B. Toll is Provost and Vice President for Academic Affairs at Florida Gulf Coast University. He is being sued in his official capacity as agent to FGCU. He is responsible for injuries to the Plaintiff as detailed in this complaint because his office refused to remedy the wrongs suffered by Cody, which included a

deprivation of Cody's substantive and procedural rights, defamation of his character, and damages to him in connection with the negligent behavior of the agents of FGCU.

10.     Defendant Mitchell L. Cordova is Dean of the College of Health Professions and Social Work at Florida Gulf Coast University. He is being sued in his official capacity as agent of FGCU as well as individually. He reports directly to the Provost. As Dean of the College of Health Professions and Social Work, he is a formal or an informal member of committees that took part in the decision to remove Cody from the FGCU-DPT program. He is ultimately responsible for the enactment and enforcement of the procedures and regulations governing the Department of Rehabilitation Sciences generally and the Doctor of Physical Therapy program specifically. He adopted in whole or in part the provisions of the FGCU-DPT Student Guidebook that were relied upon to dismiss Cody from the FGCU-DPT program. He was fully aware that the Cody was dismissed from the program without due process for his constitutionally protected speech and expression.

11.     Defendant Joan Glacken is Associate Dean of Health Sciences in the College of Health Professions and Social Work. She serves on the College of Health Professions and Social Work Appeals Committee. She is being sued in her official capacity as agent of FGCU as well as individually for her part in summarily denying Cody's appeal. She took part in the decision to enforce the Student Grievance Procedure found in the FGCU Student Handbook and not only refused to address the negligent behavior of faculty but upheld decisions based on that behavior. She insisted that

punishing Cody for his constitutionally protected speech and expression accorded with due process.

12.    Defendant Eric Shamus is Chair of the Department of Rehabilitation Sciences, which administers the FGCU-DPT program. He is being sued in his official capacity as agent of FGCU as well as individually for his part in personally overseeing Cody's expulsion from the FGCU-DPT program. He approved and participated in the following acts against Cody: escorting  Cody from class and requiring him to participate in an impromptu meeting without first consulting his advisor; prohibiting Cody from both returning to the FGCU campus and speaking with his classmates; and denying Cody the opportunity to explain and defend himself. Under color of state authority, he directly punished Cody for his constitutionally protected speech and expression. He oversaw the drafting and revision of the Physical Therapy Student Guidebook that was relied upon in effecting Cody's expulsion from the FGCU-DPT program and in justifying that expulsion. He is a formal or an informal member of the Department of Physical Therapy and Human Performance Faculty Council that placed Cody on Professional Behavior Probation a third time, knowing that such would result in Cody's expulsion from the FGCU-DPT program. He knew and either approved or ignored the grounds upon which probation was decided.

13.    Defendant Arie Van Duijn is the Program Director of the Doctor of Physical Therapy Program. He is being sued in his official capacity as agent of FGCU for placing Cody on Professional Behaviors Probation a third time without due process. He led the meeting of the Department of Physical Therapy and Human Performance Faculty

Council, if not by position, then in fact, where Cody was interrogated regarding his constitutionally protected speech. He made reckless assertions that caused Cody mental anguish, personal humiliation, embarrassment, and damage to his reputation. Under color of state law, he prohibited Cody from remaining on or returning to the FGCU campus and prohibited him from speaking with classmates. He drafted and sent the third letter of probation to Cody wherein he dismissed Cody from the program without due process. He refused to recognize Cody's right to be apprised with specificity of the reasons for his expulsion. He personally attacked Cody's character and recklessly accused him of harassing another verbally, physically, emotionally, or sexually. He treated Cody with bias by singling out Cody's actions as reprehensible and unprofessional when such actions were common among students in the FGCU-DPT program. Dr. Van Duijn did not apply the FGCU-DPT policies and procedures uniformly and fairly but in a biased and unfair manner that harmed Cody. He sought to punish Cody for his constitutionally protected speech and expression. He is being sued individually and in his official capacity.

## SUMMARY OF FACTS

14.     This civil rights action seeks to recover damages and obtain injunctive relief to redress Defendants' unlawful expulsion of Cody from the Doctor of Physical Therapy program at Florida Gulf Coast University under color of state and law and due process but without actual due process, either procedural or substantive, in violation of the Fourteenth Amendment of the United States Constitution and in violation of Cody's

fundamental right of freedom speech guaranteed under the First Amendment of the United States Constitution.

15.     In connection with Defendants' unlawful expulsion of Cody, and pertaining thereto, Cody has suffered from Defendants' defamatory and negligent actions.

16.     Prior to and during the period of his expulsion, Cody was enrolled in the Doctor of Physical Therapy program at Florida Gulf Coast University ("FGCU-DPT program").

17.     Cody paid tuition, fees, or costs related to his attendance at FGCU for the Fall 2014 and Spring 2015 Semesters.

18.     While enrolled in the FGCU-DPT program, Cody associated online with friends also enrolled in the FGCU-DPT program in a private, closed group called "DPT-2017" hosted on the social network website, Facebook.

19.     The DPT-2017 page was a private page on Facebook; as such, it was not administered by or under the direction of faculty or staff of the FGCU-DPT program.

20.     The DPT-2017 page was not associated with any website administered by the university or the official education page of Florida Gulf Coast University College of Health     Professions     and     Social     Work,     located     at https://www.facebook.com/FGCUCHPSW.

21.     Social networking on Facebook or otherwise does not constitute grounds for dismissal from the FGCU-DPT program unless a student used Facebook for a purpose that posed a threat to the welfare of faculty, staff, students, or patients in the FGCU-DPT program.

22.     Students are not required to obtain permission from FGCU-DPT faculty
before associating with others on Facebook or creating private pages nor are they
required to seek approval from faculty before their associations through Facebook.

23.     Messages, exchanges, postings, and interactions on the DPT-2017 page
are and were the property of the Facebook users as individuals.

24.     Previous to February 18, 2015, Cody posted a hyperlink to a joke on the
private page DPT-2017 and warned others of the nature of the content prior to exposure
to the content of the joke.

25.     Other students posted jokes of a sexual nature on the DPT-2017 page.

26.     An unnamed student submitted a complaint regarding the content of
Cody's posted Facebook joke to the Office of Student Conduct at FGCU.

27.     The Office of Student Conduct serves as the primary liaison to the Student
Code of Conduct, and coordinates the student conduct review process.

28.     The Student Code of Conduct is not meant to be used to discipline the
lawful expression of ideas.

29.     Cody has never been charged by the Office of Student Conduct with
violating the Student Code of Conduct because the content and posting of Cody's joke on
a private, Facebook page does not fall within "prohibited conduct" under the Student
Code of Conduct.

30.     On or about February 18, 2015, while participating in an FGCU lab class,
Cody was interrupted by three (3) members of the FGCU-DPT program faculty:
Defendants, Dr. Van Duijn and Dr. Shamus, with Dr. Stephen Black ("Dr. Black").

31.    This interruption had the effect of humilitating Cody because it was unusual, unscheduled, and separated him from other students in an embarrassing manner.

32.    On the same day, on or about February 18, 2015, immediately after the interruption from class, Dr. Van Duijn, Dr. Shamus, and Dr. Black commenced an impromptu meeting ("the meeting") where Cody was questioned primarily by Dr. Van Duijn, under color of state law as a member of the Physical Therapy Faculty Council of the FGCU-DPT Program ("Faculty Council"). Cody was not represented in this meeting or permitted to meet with his faculty advisor for advice or counsel prior to the meeting.

33.    During the meeting, Dr. Van Duijn interrogated Cody about the joke and Cody was not permitted to defend himself or explain the context or circumstances surrounding the joke.

34.    During this meeting of the Faculty Council, Dr. Van Duijn recklessly asserted that Cody had committed an unprofessional act by posting to the official Facebook page of the FGCU-DPT program.

35.    In that same meeting, Cody was told that this unprofessional behavior constituted his third Professional Behaviors violation.

36.    At the meeting, Dr. Van Duijn promised Cody that a vote of the Faculty Council would be held on Tuesday, February 24, 2015 to determine whether Cody would be able to continue as a student in the FGCU-DPT program.

37.    Before the meeting ended, Dr. Van Duijn, acting in his official capacity, prohibited Cody from both returning to the FGCU campus and speaking with his classmates.

38.     In a signed letter, dated February 20, 2015, Dr. Van Duijn—contrary to his promise of due process—dismissed Cody from the FGCU-DPT program "effective immediately," because the Physical Therapy Faculty Council had placed Cody on "Professional Behavior Probation" as a result of "a specific social media posting to fellow students in a Facebook group named DPT–2017," which placement constituted Cody's "3rd time" being placed on probation. The letter is attached as "Exhibit A."

39.     On February 23, 2015, the FGCU-DPT held a special, unscheduled training on sexual discrimination under Title IX in order to address a recent incident of sexual harassment by a student in the program. Cody was absent from this meeting in accordance with Dr. Van Duijn's prohibitions from returning to the FGCU campus and speaking with his classmates.

40.     Although Cody was not specifically named in the training, his classmates reasonably believed that the special, unscheduled training was directly connected to Cody's dismissal from the program.

41.     In a signed letter, dated March 4, 2015, Cody wrote to Helen Marmachev, Office of the Ombuds at FGCU, detailing the circumstances and context of his dismissal from the FGCU-DPT program and outlining all his communications with faculty and school personnel. He requested assistance from the Ombuds.

42.     In a letter, dated April 9, 2015, Dean Glacken informed Cody that the decision to dismiss him from the FGCU-DPT program complied with university policy and procedure, and asserted Cody had been given "due process" by the faculty because "the Physical Therapy faculty followed the policy in the Student Guidebook." Cody's

appeal for further consideration of his dismissal was denied and the termination of his registration as a student in the FGCU-DPT remained final. Dean Glacken denied that Cody had been dismissed due to sexual harassment and cited, vaguely, his third probation from the program for violation of professionalism standards as the reason for his dismissal. The letter is attached as "Exhibit B."

43.     Cody appealed the decision to remove him from the program at every level permitted and according to established practices and procedures but was denied appeal or ignored in his requests.

44.     Cody retained legal counsel in order to petition this court to redress his grievances, enjoin the university, and sue for damages.

## ALLEGATIONS OF LAW

45.     Under 42 U.S.C. § 1983, civil liability is imposed upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or the law of the United States.

46.     To establish a prima facie case under 42 U.S.C. § 1983, plaintiffs must allege two elements: (1) Defendants' actions occurred under color of law and (2) the Defendants' actions deprived the Plaintiff of a right secured under the Constitution or law of the United States.

47.     Defendants are "persons" for purposes of the claims set forth in this complaint, as the term "person" is used in 42 U.S.C. § 1983.

48.     Plaintiff Cody Childers at all times relevant had a constitutionally recognized personal property right in his ongoing education and a liberty interest in his

name and reputation, each of which is constitutionally protected by the procedural safeguards of the Due Process clause of the Fourteenth Amendment of the Constitution.

49.     Cody at all times relevant had a constitutionally protected fundamental right to free speech, which is protected by substantive due process under the First and Fourteenth Amendments of the Constitution.

50.     Policies and practices drafted, promulgated, and enforced by state actors are unconstitutionally vague if they fail to define with sufficient particularity the activities of protected speech and expression that might cause a student to become subject to punishment.

51.     Policies and practices drafted, promulgated, and enforced by state actors are overbroad vague if they proscribe speech and expression that are protected under the First Amendment of the Constitution, and also seek to encompass substantially more conduct and expression than necessary to achieve their lawful aims.

52.     Policies and practices drafted, promulgated, and enforced by state actors impose an unconstitutional prior restraint if they grant unbridled and unchecked discretion to state actors to punish protected speech and expression.

53.     The actions of the Defendants as set forth in this complaint were done with malice, reckless indifference, or with negligent disregard to Cody's rights, and under color of state law.

54.     The Defendants are not entitled to qualified immunity because their actions as set forth in this complaint violate clearly established constitutional rights of

which a reasonable person would have known or are so obviously wrong that only a plainly incompetent state actor would have done them.

55.     There was no basis under color of state or federal law for Defendants' actions as set forth herein.

56.     Plaintiff seeks an injunction to redress violations of his First Amendment Right of Freedom of Speech and Expression and Due Process Rights of the Fourteenth Amendment by Defendants' application of the unconstitutional provisions of the Student Guidebook.

**COUNT I**
**VIOLATION OF DUE PROCESS THROUGH VAGUE AND**
**OVERBROAD PROVISIONS OF STUDENT GUIDEBOOK AND**
**UNCONSTITUTIONAL PRIOR RESTRAINT**
**(Against Defendants FGCU and Toll, in their official capacities, and**
**Cordova, Glacken, Shamus, and Van Duijn in the their official and**
**individual capacities)**

57.     The *Department of Physical Therapy and Human Performance Student Guidebook, Doctor of Physical Therapy* (2014–2017) (hereinafter "Student Guidebook" or "the Guidebook"), includes subsections "Professional Behaviors Plan," Appendix I: Professional Behaviors Plan Assessment Form (hereinafter "Appendix I: Assessment Form"), "Student Conduct," "Professional Code of Ethics," Appendix III: American Physical Therapy Association (APTA) Code of Ethics for the Physical Therapist (hereinafter "Appendix III: APTA Code of Ethics"), "Overall Progression Standards," and "Appeals/Grievance Policy and Procedures," each of which contains provisions that are impermissibly vague and overbroad, and taken together with regulations adopted by Florida Gulf Coast University, specifically section (4)(d) of Regulation FGCU-PR4.004

"Student Grievances," grant unbridled enforcement discretion to the opinions and judgment of both the Department of Physical Therapy Faculty Council ("Faculty Council") and the College of Health Professions and Social Work Appeals Committee ("Appeals Committee"). Pertinent provisions of the *Department of Physical Therapy and Human Performance Student Guidebook, Doctor of Physical Therapy* (2014–2017), are attached as "Exhibit C"; and "Regulation: FGCU-PR4.004" is attached as "Exhibit D."

58.     The Student Guidebook is an official set of rules and regulations adopted by Defendants for the conduct of students admitted to the FGCU-DPT program.

59.     Participation as a student in the FGCU-DPT program is contingent upon compliance with rules and regulations set forth in the Student Guidebook.

### Unconstitutionally Vague Provisions of the FGCU-DPT Student Guidebook

60.     Those provisions of the Student Guidebook, attached as "Exhibit C," that are unconstitutionally vague because they fail to define with sufficient particularity the activities of protected speech and expression that might cause a student to become subject to punishment  are alleged in context with emphasis for clarification, as follows:

a.     Students are required to *advance* from beginning to professional "*levels*" of "*abilities*" based *solely on the discretion and opinion* of FGCU-DPT faculty, using the FGCU-DPT faculty-created Professional Behaviors Assessment Form. (*Comparing* "Implementation Plan," page 27, *with* "Professional Behaviors Plan," page 27, *and* Appendix I: Assessment Form, pages 59–70, Student Guidebook, attached as "Exhibit C," emphasis added.)

b.      "A student must perform at the *appropriate level* of Professional Behaviors Criteria as outlined in the Professional Behaviors Plan." (*See* "Retention and Progression Standards," page 30, Student Guidebook, attached as "Exhibit C," emphasis added.)

c.      The FGCU-DPT faculty utilizes a Professional Behaviors Assessment Form to evaluate "*levels*" of each student's "*ability*" for "professionalism," ("Appendix I: Assessment Form," pages 59–70, Student Guidebook, attached as "Exhibit C," emphasis added),   which includes the following utilized but undefined criteria on page 64:

i.      Under section 4, "Interpersonal Skills" is defined as "[t]he ability to *interact effectively* with patients, *families*, *colleagues*, *other healthcare professionals*, and *the community* in a *culturally aware* manner."

ii.     Under section 4: "Maintains professional demeanor in all interactions."

iii.    Under section 4: "Communicates with others in a respectful and confident manner."

iv.     Under section 4: "Respects differences in personality, lifestyle and learning styles during *interactions* with all persons."

v.      Under section 4: "Recognizes the emotions and bias that one brings to all *professional interactions.*"

vi.      Under section 6, "Professionalism" is defined as an entirely separate ability from "Interpersonal Skills," as "[t]he ability to exhibit appropriate professional conduct and to *represent the profession effectively* while *promoting the growth/development* of *the Physical Therapy profession*."

vii.     Under section 6: "Abides by all aspects of the *academic program honor code* and *the APTA Code of Ethics*."

viii.    Under section 6: "Projects professional *image*."

ix.      Under section 6: "Demonstrates *cultural/generational awareness*, *ethical values*, respect, and continuous *regard* for all classmates, academic and clinical faculty/staff, patients, families, and other healthcare providers."

(See "Appendix I: Assessment Form," Student Guidebook, pages 64, 66, attached as "Exhibit C," emphasis added)

d.      Under "Student Conduct," students are held to vague expectations regarding their conduct:

i.       "As part of Program accreditation, it is expected that faculty and *students are responsible for preserving the privacy, dignity and safety of all people . . .*"

("Student Conduct," Student Guidebook, page 38, attached as "Exhibit C," emphasis added)

**Unconstitutionally Overbroad Provisions of the FGCU-
DPT Student Guidebook**

61.     There is some overlap between provisions that are unconstitutionally vague and provisions that are unconstitutionally overbroad.

62.     Those provisions of the Student Guide that are unconstitutionally overbroad because they proscribe speech and expression that are protected under the First Amendment of the Constitution, and also seek to encompass substantially more conduct and expression than necessary to achieve their lawful aims are alleged in context with emphasis for clarification, as follows:

        a.     The FGCU-DPT faculty utilizes a Professional Behaviors Assessment Form ("Appendix I: Assessment Form," pages 59–70, Student Guidebook, attached as "Exhibit C")  to evaluate "levels" of each student's "ability" for "professionalism," which includes the following criteria from the Assessment Form, which are overbroad because they proscribes speech and expression that are protected under the First Amendment and encompass substantially more conduct and expression than is necessary to achieve the FGCU-DPT program goals of "ensur[ing] student success in peer, patient, colleague, and faculty interactions in the classroom and practice settings" ("Professional Behaviors Plan," page 25, Student Guidebook, attached as "Exhibit C":

                i.     Under section 4, "Interpersonal Skills" is defined broadly, and in pertinent part, as the ability to "interact effectively" with "*the*

*community*"; and the criteria used to evaluate a student's ability are similarly overbroad:

ii.      Under section 4: "Maintains professional demeanor in *all interactions*."

iii.     Under section 4: "Communicates *with others* in a respectful and confident manner."

iv.      Under section 4: "Respects differences in personality, lifestyle and learning styles *during interactions with all persons*."

v.       Under section 6, "Professionalism" is described broadly as the "ability to exhibit appropriate professional conduct and to represent the profession effectively while promoting the growth/development of the Physical Therapy profession," without actually circumscribing for students when such ill-defined professional conduct is required, when the profession is to be represented, whether effective representation is required in personal and in public life, or when promotion of the growth/development of the Physical Therapy profession.

(See "Appendix I: Assessment Form," Student Guidebook, pages 64, 66, attached as "Exhibit C," emphasis added)

b.       Students are required to "abide by all aspects of. . . the APTA Code of Ethics," which includes the provision that "Physical therapists shall not harass anyone verbally, physically, emotionally, or sexually." (See "Appendix III:

APTA Code of Ethics, pages 99–100, Student Guidebook, attached as "Exhibit C.") This is an unconstitutionally overbroad because, as applied, it proscribes speech and expression that are protected under the First Amendment.

(See "Appendix I: Assessment Form," Student Guidebook, attached as "Exhibit C," emphasis added)

      c.     Under "Student Conduct," failure of students to be responsible for the "*privacy, dignity and safety of all people*" would result in a violation of Professional Behaviors Plan. ("Student Conduct," page 38, Student Guidebook, attached as "Exhibit C," emphasis added)

### Unconstitutional Prior Restraints on Free Speech and Expression in the FGCU-DPT Student Guidebook

63.     That provision of the Student Guide that constitutes an unconstitutional prior restrain on freedom of speech and expression because it grants unbridled and unchecked discretion to FGUC-DPT faculty to punish protected speech and expression is alleged as follows:

      a.     Professionalism is required of students and is defined as the "ability to . . . represent the profession effectively while promoting the growth/development of the Physical Therapy profession." (See "Appendix I: Assessment Form," page 66, Student Guidebook, attached as "Exhibit C," emphasis added).

64.     Such a provision and requirement is unconstitutional and impermissible because it restrains students from exercising their rights to critique what they may find amiss in the profession because that critique may not promote the growth/development of the profession.

65.     The FGCU-DPT faculty have are granted unbridled and unchecked discretion to determine when and what manner of speech or expression may be restricted based on the ability of that speech or expression to promote the growth or development of the profession because a student's grievance for violation of professional behaviors must be resolved by FGCU-DPT faculty and may not be addressed in an objective manner by an appeal to the Office of the Ombudsman through the Student Grievance process.

66.     The *Department of Physical Therapy and Human Performance Student Guidebook, Doctor of Physical Therapy* (2014–2017)( "the Student Guidebook) expressly directs students of the FGCU-DPT program to address their grievances in accordance with "the University Guidelines" found at http://studentservices.fgcu.edu/StudentConduct/grievance.html. (See "Student Grievance Procedure," page 37, Student Guidebook, attached as "Exhibit C.")

67.     The "University Guidelines," as identified in the Student Guidebook, and located at http://studentservices.fgcu.edu/StudentConduct/grievance.html, is an outdated version of FGCU-PR4.004. (*Comparing* "Student Grievance Procedure," attached as "Exhibit E" *with* "Regulation: FGCU-PR4.004," attached as "Exhibit D," and "Regulation Action," attached as "Exhibit F.")

68.     Defendant Florida Gulf Coast University Board of Trustees ("FGCU") is a state actor and employs the Defendants named herein to act on its behalf to administer the Doctor of Physical Therapy program.

69.     FGCU is responsible for FGCU Regulation FGCU-PR4.004 and its effects on those exclusions in subsection (4)(d).

70.     FGCU also maintains the website titled "Student Grievance Procedure," located at http://studentservices.fgcu.edu/StudentConduct/grievance.html, contained within the Florida Gulf Coast University Student Guidebook. (See language at the bottom of "Exhibit E," saying "This is an official FGCU web page," with an updated timestamp "10/01/2015 11:11.")

71.     The intent of FGCU Regulation FGCU-PR4.004 is to "establish the University's student grievance procedure," permitting students to appeal decisions, to bring complaints, and in general, afford students of FGCU due process through the Office of the Ombudsman. (See "Regulation: FGCU-PR4.004," attached as "Exhibit D.")

72.     Regulation FGCU-PR4004(4)(d) specifically excludes "Professional judgment of licensed practitioners in the health related professions" from the "appeal to the Office of the Ombudsman." (See "Regulation: FGCU-PR4.004," attached as "Exhibit D.")

73.     Defendants knew or should have known that the *Department of Physical Therapy and Human Performance Student Guidebook, Doctor of Physical Therapy* (2014–2017) ("the Student Guidebook") contains provisions that are incompatible with current FGCU Regulation FGCU-PR4.004 Student Grievance Procedure, which

expressly excludes FGCU-DPT students from due process through the Office of the Ombudsman.

74.     Defendants violated due process rights to deprive Plaintiff of his substantive and procedural due process rights, which a reasonably prudent person or plainly competent state actor would have known, because of the unworkable procedure they created , which they used to deny due process to Cody.

75.     Because Defendants knew or should have known of those things alleged in paragraph 74 and 75, they are not entitled to qualified immunity.

76.     Defendant Ronald B. Toll was sent a detailed timeline of grievances suffered by Cody through the malicious, reckless, and negligent behavior of FGCU-DPT faculty and knowingly refused to look critically at the behavior of FGCU and its agents and grant Cody a hearing or provide relief from unfair treatment. Some of unworkable procedures and denial of due process were outlined for Defendant Toll in a letter to him by Cody, dated April 21, 2015.

77.     Defendant Mitchell L. Cordova as Dean of the College of Health Professions and Social Work, oversees the Department of Rehabilitation Sciences and permitted the use of the Student Guidebook, including those unconstitutional provisions of the FGCU-DPT Student Guidebook; he and his office used those provisions to dismiss Cody from the FGCU-DPT program and deny his appeal.

78.     Defendant Joan Glacken, as Associate Dean, used provisions of the FGCU-DPT Student Guidebook to deny Cody's appeal from dismissal. Dean Glacken acted  as the voice of the Appeals Committee in denying Cody's appeal and asserting that

Cody had been afforded due process. (See "Exhibit B.") She recklessly asserted falsely that Cody had not been dismissed for allegations of sexual harassment, although those reasons were given in his dismissal letter from Dr. Van Duijn. (See "Exhibit A.") Defendant Glacken relied specifically upon the outdated and incorrect policy in the FGCU Student Guidebook, section 6C10-4.004, to deny Cody due process in her letter dated April 9, 2015:

> Your dismissal from the Physical Therapy program was based on the professional judgment of licensed practitioners in the health related professions which does not allow your appeal to be processed.

(See "Exhibit B.")

79.     Defendant Eric Shamus "Dr. Shamus," Chair of the Department of Rehabilitation Sciences, oversaw the drafting and revision of the Student Guidebook, including the unconstitutional provisions alleged herein, and acted in his official capacity to recommend the Student Guidebook for use in the FGCU-DPT program. He used those unconstitutional provisions to restrain by punishment and threat of discipline protected speech and expression, remove Cody from the program, and deny Cody's appeal.

80.     Dr. Shamus was plainly incompetent in drafting provisions that a reasonable person would know prohibited constitutionally protected speech and expression, and would deny due process to students with grievances. He also drafted provisions that deny due process insofar as they fail to give fair notice of the specific conduct proscribed and do not limit the exercise of arbitrary and discriminatory enforcement by the FGCU-DPT faculty.

81.     Defendant Arie Van Duijn, Program Director of the Doctor of Physical Therapy Program, used the provisions to act in an arbitrary and discriminatory way against Cody for the purpose of removing Cody from the program. Through Dr. Van Duijn's actions, the Faculty Council dismissed Cody from the program without due process. Dr. Van Duijn recklessly asserted those provisions he intended to use to justify removal of Cody from the FGCU-DPT program and then cited those provisions under color of state authority to in fact remove Cody from the program, deny him fair notice, due process, a hearing, and all other measures reasonably required under the terms of the Student Guidebook and  those afforded to Cody under the First Amendment of the Constitution.

82.     Defendants' policies and practices connected with the Student Guidebook, including but not limited to sections cited in this complaint, are unconstitutionally vague because they fail to define with sufficient particularity the activities of protected speech and expression that might cause a student to become subject to punishment.

83.     Defendants' policies and practices connected with the Student Guidebook, including but not limited to sections cited in this complaint, are unconstitutionally overbroad because they proscribe speech and expression that are protected under the First Amendment of the Constitution, and also seek to encompass substantially more conduct and expression than necessary to achieve their lawful aims without a rational basis.

84.     Defendants' policies and practices impose an unconstitutional prior restraint because they authorize faculty of the FGCU-DPT program with far too broad

discretion to punish protected speech and expression with seeming impunity, unbridled and unchecked.

85.     Protected speech is chilled by Defendants' policies and practices because students are discouraged from exercising protected First Amendment rights for fear of punishment, including expulsion from the program.

86.     As the direct and proximate result of the malice, reckless indifference, or negligence of Defendants in enforcing the policies and practices of the Student Guidebook and their own biases against the Cody, he has suffered economic harm, mental anguish, personal humiliation, embarrassment, and damage to his reputation

87.     Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff is entitled to a declaration that Defendants did violate his First Amendment rights and an injunction against ongoing enforcement of the policies and practices violating those rights.

WHEREFORE, the Plaintiff Cody Childers respectfully requests the following relief from this Honorable Court pursuant to this Count against Defendants for Violation of Plaintiff's right to Due Process:

>     a.     Order Defendants to purge Plaintiff's expulsion from the FGCU-DPT program from his student record, file, and transcript;

>     b.     Order Defendants to refund tuition, fees, and costs related to Cody's attendance at FGCU for Spring 2015 Semester in the amount of $11,200;

>     c.     Declare that provisions of the Student Guidebook are violative of the First and Fourteenth Amendments of the Constitution;

d.      Enter a prospective permanent injunctive Order, requiring Defendants to cease enforcement of those unconstitutional provisions of the Student Guidebook by removing from Plaintiff's record the penalty of dismissal, probation, and any documents related to the charges of misconduct, including but not limited to, records regarding the charge, investigation, recommendation, hearing, and appeal;

e.      Enter a prospective permanent injunctive Order, requiring Defendants respond as they would for any student with comparable academic performance of the Plaintiff, as requested for any future education program applications, for employment purposes, or otherwise;

f.      Award compensatory damages against the individual Defendants in the amount of $693,000 damages for past and future earnings; and past and future injury to reputation; and for past and future mental anguish, personal humiliation, and embarrassment;

g.      Award punitive damages for the willful, wanton, oppressive, malicious, or grossly negligent and unlawful conduct of Defendants sued individually herein;

h.      Award costs and attorney fees, plus interest, in bringing and maintaining this action pursuant to 42 U.S.C. § 1988;

i.      Retain jurisdiction over this action for the enforcement of its order and final judgment; and

j.    Grant any other and further relief as this court deems equitable and

just.

## COUNT II
## VIOLATION OF FIRST AMENDMENT FREEDOM OF SPEECH
### THROUGH CONTENT-BASED DISCRIMINATION
(Against FGCU, Toll, Cordova, and Glacken in their official
capacities, and Shamus and Van Duijn in their official and individual
capacities)

88.    Previous to February 18, 2015, Cody posted a hyperlink to a joke on the

private page DPT-2017. At the time, he was enrolled in the FGCU-DPT program.

89.    An unnamed student submitted a complaint regarding the content of

Cody's posted Facebook joke to the Office of Student Conduct at FGCU.

90.    In response to a notice from the Office of Student Conduct, the FGCU-

DPT Faculty Council, including Dr. Van Duijn and Dr. Shamus, placed Cody on

probation in order to remove him from the program, knowing that a third probation

would constitute automatic removal.

91.    Defendants, acting under color of state law and, ostensibly, pursuant to the

Student Guidebook and school procedures, punished Cody for his private, off-campus

speech, based on the content of his joke and their presumptions regarding Cody's

viewpoint and expressive conduct.

92.    Defendants punished Cody for posting to Facebook a joke that was within

his protected rights to free speech and expression. Under color of state law, Defendants

punished Cody for his alleged violation of the prohibition on harassment of a verbal,

physical, emotional, or sexual nature, but in reality, such punishment constituted an unreasonable restriction on Cody's free speech and expression.

93.     To further punish Cody and regulate his speech, Defendants, acting under color of state authority, required Cody to be removed from campus and prohibited his return.

94.     The Defendants' response to Cody's post on Facebook was not due to a substantial disruption of the FGCU-DPT environment caused by the post. In fact, Cody alleges that jokes of a sexual nature were common not only off-campus and on the DPT-2017 page, but also during labs and in classroom settings on-campus.

95.     Defendants were not responding to Cody's Facebook post because there was a reasonable forecast of substantial disruption of the FGCU-DPT environment.

96.     Defendants acting under color of state law deprived Cody of his clearly established property rights in his ongoing education in FGCU-DPT and his fundamental rights to freedom of speech and expression, and sought to enforce unconstitutional policies and practices through fear of punishment.

97.     Shortly after Cody was dismissed from the program, the FGCU-DPT faculty held a special, unscheduled sexual discrimination and harassment training in response to their perceptions regarding Cody's speech and his subsequent dismissal.

98.     As a direct and proximate result of these malicious, recklessly indifferent, or negligent acts of the Defendants, Cody has suffered and will continue to suffer substantial economic injury and harm. Therefore, Cody is entitled to an award of monetary damages against the Defendants in their individual capacities, including

punitive damages as necessary, and injunctive and compensatory relief from the Defendants in their official capacities.

99.     Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff is entitled to a declaration that Defendants did violate his First Amendment rights and an injunction against ongoing enforcement of the policies and practices violating those rights.

WHEREFORE, the Plaintiff Cody Childers respectfully requests the following relief from this Honorable Court:

a.      Order Defendants to purge Plaintiff's expulsion from the FGCU-DPT program from his student record, file, and transcript;

b.      Order Defendants refund tuition, fees, and costs related to Cody's attendance at FGCU for Spring 2015 Semester in the amount of $11,200;

c.      Declare Defendants' actions violate Plaintiff's rights to freedom of speech and expression;

d.      Enter a prospective permanent injunctive Order, requiring Defendants respond as they would for any student with comparable academic performance of the Plaintiff, as requested for any future education program applications, for employment purposes, or otherwise;

e.      Award compensatory damages against the individual Defendants in the amount of $693,000 damages for past and future earnings; and past and future injury to reputation; and for past and future mental anguish, personal humiliation, and embarrassment.

f.  Award punitive damages for the willful, wanton, oppressive, malicious, or grossly negligent and unlawful conduct of Defendants sued individually herein;

g.  Award costs and attorney fees, plus interest, in bringing and maintaining this action pursuant to 42 U.S.C. § 1988;

h.  Retain jurisdiction over this action for the enforcement of its order and final judgment; and

i.  Grant any other and further relief as this court deems equitable and just.

## COUNT III
## DEFAMATION
**(Against FGCU, Toll, and Shamus, in their official capacities, and Van Duijn in his official and individual capacities)**

100.  To succeed on a claim for defamation, the claimant must show a statement was 1) published, 2) false, 3) made negligently when concerning a private person, 4) actually damaging to the Plaintiff, and 5) defamatory (harmful to the target's character).

101.  Defendant Dr. Van Duijn published the false statement that the Plaintiff, Cody Childers, displayed conduct that was unprofessional by harassing someone, unnamed, in a verbal, physical, emotional, or sexual way in his letter, which was not sent confidentially but rather copied to several individuals. (See "Exhibit A.")

102.  Defendant Dr. Van Duijn also slandered Cody in the meeting with Dr. Shamus and Dr. Black when he said that Cody had sexually harassed another student, which slander also constitutes publication of the false statement.

103.   The FGCU-DPT Faculty defamed Cody when they held a training immediately after his expulsion from the program, and in response thereto, on Title IX sexual discrimination and harassment training.

104.   These statements were made negligently because Cody was in fact never involved in the verbal, physical, emotional, or sexual harassment of any person, as is supported by the statement of Dean Glacken. (See "Exhibit B.")

105.   Nevertheless, this publication was not recanted, and instead, Cody was punished for making statements that violated "the APTA Code of Ethics," which includes the provision that "Physical therapists shall not harass anyone verbally, physically, emotionally, or sexually." (See "Exhibit A.")

106.   The damage to Cody—manifest most definitely in his dismissal of Cody from the FGCU-DPT program, as well as in his humiliation, embarrassment, and loss of money—was proximately caused by the Defendant's defamatory statements regarding Cody's character that Cody was someone who in fact had exhibited unprofessional behavior for his their presumption of his harassment.

WHEREFORE the Plaintiff requests this Court rule against Defendant Arie Van Duijn for his defamatory conduct and award Plaintiff damages in the amount of $83,000 for past and future injury to reputation; and for past and future mental anguish, personal humiliation, and embarrassment.

Respectfully submitted this 19th day of November, 2015.

/s/ Brantley Oakey
BRANTLEY OAKEY, ESQ.
Fla. Bar #99076
The Law Office of Brantley Oakey
Attorney for Plaintiff
The Law Office of Brantley Oakey
780 5th Ave. S, Ste. 200
Naples, FL 34102
239-963-2897
boakey@naplesattorney.biz