UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CODY K. CHILDERS,

      Plaintiff,

v.                                       Case No:  2:15-cv-722-FtM-MRM

FLORIDA GULF COAST UNIVERSITY
BOARD OF TRUSTEES, RONALD B.
TOLL, MITCHELL L. CORDOVA, JOAN
GLACKEN, ERIC SHAMUS and ARIE
VAN DUIJN,

      Defendants.

_____/

## OPINION AND ORDER

Pending before the Court are Defendants' Omnibus Motion to Dismiss Plaintiff's Amended Complaint, and Alternative Motion for Summary Final Judgment filed on April 5, 2016 (Doc. 42), Plaintiff's response in opposition thereto filed on April 30, 2016 (Doc. 48), Defendants' reply filed on May 27, 2016 (Doc. 53), Defendants' corrected reply filed on June 1, 2016 (Doc. 54), and Defendants' notice of supplemental authority filed on February 22, 2017 (Doc. 60).

For the reasons set forth in this Opinion and Order, Defendants' Motion (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART**.

## I.    APPLICABLE LEGAL STANDARDS

Defendants' Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, Fed. R. Civ. P. 12(d) and 56.  (Doc. 42 at 1, 11, 25).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss, a

court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Conclusory allegations and legal conclusions are not entitled to a presumption of truth, however. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Under Fed. R. Civ. P. 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

If a court considers matters that are outside a pleading on a motion to dismiss for failure to state a claim, the motion must be treated and disposed of as if it were a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d). "'While the Court may convert a motion to dismiss to a motion for summary judgment and consider matters submitted outside the pleadings, the decision to do so is within the Court's discretion.'" *Muller v. Freedom Med. Pa., Inc.*, No. 8:15-cv-822-T-24MAP, 2015 WL 4770803, at *2 (M.D. Fla. Aug. 12, 2015) (quoting *Dawkins v. Picolata Produce Farms, Inc.*, No. 3:05-cv-559-J-32MMH, 2005 WL 3054054, at *2 (M.D. Fla. Nov. 15, 2005)). "A document attached to a motion to dismiss may be considered by

the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Slakman v. Admin. Comm. of Delta Air Lines, Inc.*, 660 F. App'x 878, 879 (11th Cir. 2016); *see also Romano v. Rambosk*, No. 2:12-cv-313-FtM-29UAM, 2014 WL 103171, at *5-6 (M.D. Fla. Jan. 9, 2014).

Pursuant to Fed. R. Civ. P. 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* "As a general rule[,] summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989).

In considering summary judgment, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record in the light most favorable to the non-moving party. *See Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant succeeds in that regard, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *Celotex*, 477 U.S. at 324.

3

## II.    BACKGROUND

### A.    The Amended Complaint and Exhibits Attached Thereto

Drawing all reasonable inferences in favor of Plaintiff, the following facts are taken from

the factual allegations in the Amended Complaint (Doc. 36) and Exhibits A-G attached thereto

(Docs. 36-1 – 36-7).[1]

### 1.    The Parties

Plaintiff was a student enrolled in the Doctor of Physical Therapy program at Florida

Gulf Coast University (the "FGCU-DPT program") until he was dismissed from the program on

February 20, 2015.  (Doc. 36 at ¶¶ 7, 16).  All of Plaintiff's claims in this case relate to his

dismissal from the FGCU-DPT program and certain events that occurred in connection with his

dismissal.  (*Id.* at ¶¶ 57-105).

Defendant Florida Gulf Coast University Board of Trustees ("FGCU") is a state

university subdivision of the State of Florida.  (*Id.* at ¶ 8).  Defendant Ronald B. Toll is the

Provost and Vice President for Academic Affairs at FGCU.  (*Id.* at ¶ 9).  Defendant Mitchell L.

Cordova is the Dean of the College of Health Professions and Social Work at FGCU.  (*Id.* at ¶

10).  Defendant Joan Glacken is the Associate Dean of Health Sciences in the College of Health

Professions and Social Work at FGCU.  (*Id.* at ¶ 11).  Defendant Eric Shamus is Chair of the

Department of Rehabilitation Sciences, which administers the FGCU-DPT program.  (*Id.* at ¶

---

[1]  These exhibits include:  (1) a letter dated February 20, 2015 from Defendant Van Duijn to
Plaintiff (Ex. A; Doc. 36-1); (2) a letter dated April 9, 2015 from Defendant Glacken to Plaintiff
(Ex. B; Doc. 36-2); (3) a copy of the *Department of Physical Therapy and Human Performance
Student Guidebook, Doctor of Physical Therapy* (2014-2017) and appendix materials (Ex. C;
Doc. 36-3); (4) Regulation FGCU-PR4.004 pertaining to Student Grievances (Ex. D; Doc. 36-4);
(5) Office of Student Conduct Student Grievance Procedure (Ex. E; Doc. 36-5); (6) Florida Gulf
Coast University Notice of Regulatory Action dated September 12, 2008 (Ex. F; Doc. 36-6); and
(7) the text of the alleged "joke" that Plaintiff posted on a Facebook page (Ex. G; Doc. 36-7).

12).  Defendant Arie Van Duijn is the Program Director of the Doctor of Physical Therapy Program.  (*Id.* at ¶ 13).  Plaintiff alleges that each of the individual defendants played a role in his dismissal from the FGCU-DPT program.  (*Id.* at ¶¶ 9-13).  Plaintiff sues each of the individual defendants in their official capacities.  (*Id.*).  With the exception of Defendant Toll, Plaintiff also sues the remaining individual defendants in their individual capacities.  (*Id.*).

## 2. The Facebook Post at Issue

While enrolled in the FGCU-DPT program, Plaintiff associated online with friends who were also enrolled in the program.  (*Id.* at ¶ 18).  Specifically, Plaintiff participated in a private, closed Facebook group page called "DPT-2017."  (*Id.*).  The DPT-2017 group page was not administered by or under the direction of faculty or staff of the FGCU-DPT program.  (*Id.* at ¶ 19).  The page was not associated with any website administered by FGCU or the official Facebook page[2] of the FGCU College of Health Professions and Social Work.  (*Id.* at ¶ 20).

In addition to being a student, Plaintiff is also "an amateur comedian and performs comedy acts from time to time at bars and comedy clubs, the content of which is vulgar at times."  (*Id.* at ¶ 7).  Previous to February 18, 2015, Plaintiff posted a hyperlink to a "joke" on the DPT-2017 private page and warned others of the nature of the content of the joke.  (*Id.* at ¶ 24).  The joke was not visible unless a Facebook user clicked the hyperlink to open a new page.  (*Id.* at ¶ 85).  Plaintiff alleges that he was trying to refine the joke for an upcoming comedy routine.  (*Id.* at ¶ 24).  He warned that students who would not come to see him perform an adult comedy routine at a bar should not open the joke.  (*Id.*).  Plaintiff attached the text of the joke as Exhibit G to the Amended Complaint.  (*Id.*; *see also* Doc. 36-7).

---

[2]  The official Facebook page is available at https://www.facebook.com/FGCUCHPSW.  (*See* Doc. 36 at ¶ 20).

Students are not required to obtain permission or approval from FGCU-DPT faculty before associating with others or creating private pages on Facebook.  (Doc. 36 at ¶ 22).  Plaintiff alleges that other students posted jokes of a sexual nature on the DPT-2017 page.  (*Id.* at ¶ 25). Plaintiff also alleges that "[m]essages, exchanges, postings, and interactions on the DPT-2017 page are and were the property of the Facebook users as individuals."  (*Id.* at ¶ 23).

### 3.    Plaintiff's Dismissal from the FGCU-DPT Program

After the hyperlink to the joke was posted, an unnamed student submitted a complaint to the FGCU Office of Student Conduct regarding the content of the joke.  (*Id.* at ¶ 26).  On or about February 18, 2015, Defendants Van Duijn and Shamus, along with Dr. Stephen Black "interrupted" Plaintiff while he was participating in an FGCU lab class.  (*Id.* at ¶ 30). Immediately after that interruption, Van Duijn, Shamus, and Black held an impromptu meeting in which Plaintiff was questioned primarily by Van Duijn.  (*Id.* at ¶ 32).  Plaintiff was not represented in the meeting, nor was he permitted to meet with his faculty advisor for advice or counsel before the meeting.  (*Id.*).  Plaintiff was also not permitted to defend himself or to explain the context or circumstances surrounding the joke.  (*Id.* at ¶ 33).

Plaintiff alleges that during the meeting, Van Duijn "recklessly asserted that [Plaintiff] had committed an unprofessional act by posting to the official Facebook page of the FGCU-DPT program."  (*Id.* at ¶ 34).  In the same meeting, Plaintiff was told that this unprofessional behavior constituted his third Professional Behaviors violation.  (*Id.* at ¶ 35).  Van Duijn promised Plaintiff that a vote of the Faculty Council would be held on Tuesday, February 24, 2015 to determine whether Plaintiff would be able to continue as a student in the FGCU-DPT program. (*Id.* at ¶ 36).  Before the meeting ended, Van Duijn prohibited Plaintiff from returning to campus and speaking with his classmates.  (*Id.* at ¶ 37).

In a signed letter dated February 20, 2015, Van Duijn advised Plaintiff that he was dismissed from the FGCU-DPT program "effective immediately" because "the Physical Therapy Faculty Council had placed Plaintiff on 'Professional Behavior Probation' as a result of 'a specific social media posting to fellow students in a Facebook group named DPT-2017,' which placement constituted Plaintiff's '3rd time' being placed on probation."  (*Id.* at ¶ 38).  The February 20, 2015 letter is attached as Exhibit A to the Amended Complaint.  (*See* Doc. 36 at ¶ 38; *see also* Doc. 36-1).

On February 23, 2015, the FGCU-DPT held a special, unscheduled training on sexual discrimination under Title IX in order to address a recent incident of sexual harassment by a student in the program.  (Doc. 36 at ¶ 39).  Plaintiff was not present for this meeting because Van Duijn prohibited Plaintiff from returning to the FGCU campus and speaking with his classmates. (*Id.* at ¶ 39).  Although Plaintiff was not specifically named in the training, Plaintiff alleges that his classmates reasonably believed that the training was directly connected to Plaintiff's dismissal from the program.  (*Id.* at ¶ 40).

### 4.      Plaintiff's Appeal of the Dismissal

Plaintiff sent a letter dated March 4, 2015, to Helen Marmachev in the Office of the Ombuds at FGCU.  (*Id.* at ¶ 41).  In that letter, Plaintiff detailed the circumstances and context of his dismissal from the FGCU-DPT program, outlined all of Plaintiff's communications with FGCU faculty and personnel, and requested help from the Ombuds.  (*Id.*).

In a letter dated April 9, 2015, Dean Glacken informed Plaintiff that the decision to dismiss him complied with university policy and procedure, and asserted that Plaintiff had been given "due process."  (*Id.* at ¶ 42).  This letter is attached to the Amended Complaint as Exhibit B.  (*Id.*; *see also* Doc. 36-2).

Plaintiff alleges that he appealed his dismissal "at every level permitted and according to established practices and procedures but his appeal was not entertained." (Doc. 36 at ¶ 43). Thereafter, Plaintiff retained legal counsel and filed this suit. (*See id.* at ¶ 44).

### 5. Plaintiff's Claims

Plaintiff asserts three counts in his Amended Complaint. (*Id.* at ¶¶ 57-105).

Count I – which is brought against Defendants FGCU and Toll in their official capacities and against Defendants Cordova, Glacken, Shamus, and Van Duijn in their official and individual capacities – alleges violations of due process in three parts, all arising out of the *Department of Physical Therapy and Human Performance Student Guidebook, Doctor of Physical Therapy* (2014-2017) (the "Student Guidebook") on which Plaintiff's dismissal was based. (*Id.* at ¶¶ 57-83; *see also* Doc. 36-3). First, Plaintiff alleges that certain provisions of the Student Guidebook are unconstitutionally vague because "[t]here is nothing in the Student Guidebook that clearly puts students on notice that a private conversation held off the Universtiy [sic] and in a non-clinical setting could be grounds for a professional violation," (Doc. 36 at ¶ 61), and because "[t]here is no explanation in the Student Guidebook as to what constitutes a professional violation versus an academic one," (*id.* at ¶ 65). Second, Plaintiff alleges that certain provisions of the Student Guidebook are unconstitutionally overbroad "because they proscribe speech and expression that are protected under the First Amendment of the Constitution, and also seek to encompass substantially more conduct and expression than necessary to achieve their lawful aims." (*Id.* at ¶ 70; *see also id.* at ¶¶ 69-73). Third, Plaintiff alleges that despite his request for due process after his meeting with Van Duijn, Shamus, and Black, he was not provided due process in the manner contained in the Student Handbook because Dean Glacken relied on a Student Grievances policy that was revised in 2008 but was

not made part of the Student Guidebook.  (*Id.* at ¶ 75; *see also id.* at ¶¶ 74-83; Docs. 36-4, 36-5, 36-6).

Count II – which is brought against Defendants FCGU, Toll, Cordova, and Glacken in their official capacities, and Defendants Shamus and Van Duijn in their official and individual capacities – alleges a violation of First Amendment freedom of speech through content-based discrimination.  (Doc. 36 at ¶¶ 84-97).  Specifically, Plaintiff alleges that Defendants "acting under color of state law and, ostensibly, pursuant to the Student Guidebook and school procedures, punished [him] for his private, off-campus speech, based on the content of his joke and their presumptions regarding [his] viewpoint and expressive conduct."  (*Id.* at ¶ 89).  Plaintiff alleges that his punishment "constituted an unreasonable restriction on [Plaintiff's] free speech and expression."  (*Id.* at ¶ 90).  As a result, Plaintiff alleges that "Defendants acting under color of state law deprived [him] of his clearly established property rights in his ongoing education in the FGCU-DPT [program] and his fundamental rights to freedom of speech and expression, and sought to enforce unconstitutional policies and practices through fear of punishment."  (*Id.* at ¶ 94).

Count III asserts a claim for defamation against Defendants FGCU, Toll, and Shamus in their official capacities and against Defendant Van Duijn in his official and individual capacities.  (*Id.* at ¶¶ 98-105).  Citing the February 20, 2015 letter from Van Duijn confirming Plaintiff's dismissal from the FGCU-DPT program, Plaintiff alleges that Van Duijn "published the false statement that the Plaintiff, Cody Childers, displayed conduct that was unprofessional by harassing someone, unnamed, in a verbal, physical, emotional, or sexual way in his letter, which was not sent confidentially but rather copied to several individuals.  (See 'Exhibit A.')."  (*Id.* at ¶ 99; *see also* Doc. 36-1).  Plaintiff further alleges that Van Duijn "also slandered [him] in the

meeting with Dr. Shamus and Dr. Black when he said that [Plaintiff] had sexually harassed another student, which slander also constitutes publication of the false statement." (Doc. 36 at ¶ 100). Plaintiff also alleges that "[t]he FGCU-DPT Faculty defamed [him] when they held a training immediately after his expulsion from the program, and in response thereto, on Title IX sexual discrimination and harassment training." (*Id.* at ¶ 101).

Based on these claims, Plaintiff seeks, *inter alia*, a refund of his tuition, compensatory damages, punitive damages, and injunctive relief to redress his allegedly unlawful expulsion from the FGCU-DPT program. (*Id.* at ¶¶ 14, 56, and at pp. 23-24, 26-27, 29).

### B.      Exclusion of Other Matters Submitted Outside the Pleadings

Although Defendants have submitted a number of additional materials as exhibits in support of their Alternative Motion for Summary Final Judgment (*see* Docs. 42-1 – 42-6), as explained below, the Court exercises its discretion to exclude those extrinsic matters from consideration given the posture of this case at the time Defendants' Motion was filed and now. Accordingly, the Court will limit its analysis to the issues presented pursuant to Fed. R. Civ. P. 12(b)(6), the allegations of the Amended Complaint, and the exhibits attached to the Amended Complaint. The Court expressly declines to consider at this time any of the extrinsic materials attached to Defendants' Motion (Doc. 42).

## III.      ANALYSIS

For the reasons set forth below, the Court addresses Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the Court declines to consider Defendants' alternative motion for summary judgment or to convert the motion to dismiss to one for summary judgment until after Plaintiff has an adequate opportunity to conduct discovery.

### A.      Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendants argue that the Amended Complaint must be dismissed in its entirety for six reasons.  First, Defendants argue that qualified immunity defeats the claims brought against the individual Defendants in Counts I and II.  (Doc. 42 at 11-13).  Second, Defendants argue that money damages are not available under Counts I and II against persons alleged to have acted in their official capacity.  (*Id.* at 14-15).  Third, Defendants argue that Plaintiff's substantive due process claims in Counts I and II fail as a matter of law because Plaintiff has not alleged a violation of a fundamental constitutional right.  (*Id.* at 15-17).  Fourth, Defendants argue that Plaintiff's procedural due process claim in Count I fails because Plaintiff did not seek sufficient and available state court relief, Plaintiff's dismissal was an academic judgment, and Plaintiff otherwise received adequate procedural due process.  (*Id.* at 17-19).  Fifth, Defendants argue that Counts I and II fail because Plaintiff has not stated a viable claim for violation of First Amendment rights.  (*Id.* at 20-24).  Sixth, Defendants contend that Plaintiff has not stated a viable claim for defamation in Count III.  (*Id.* at 24-25).

The Court addresses each of Defendants' arguments in turn below.

### 1.      Qualified Immunity as to the Individual Defendants (Counts I-II)

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[Q]ualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability.'"  *Id.* (quoting *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008); emphasis in original omitted).  "For this

reason, the Supreme Court instructs courts to resolve 'immunity questions at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

"To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority." *Id.* (citing *Bates*, 518 F.3d at 1242).  Defendants take the position that "it is undisputed that the individual Defendants were acting within the scope of their official and discretionary duties as FGCU employees." (Doc. 42 at 12).  Not surprisingly, Plaintiff disagrees, arguing that the policing of private Facebook posts is not within the Defendants' discretionary authority, but rather outside the scope of their duties.  (Doc. 48 at 4-6).

Upon review, the allegations of the Amended Complaint, taken as true and construed in the light most favorable to Plaintiff, sufficiently allege that the act of monitoring the private Facebook page at issue is not within the individual Defendants' discretionary authority except, perhaps, in limited circumstances where "a student used Facebook for a purpose that posed a threat to the welfare of faculty, students, or patients in the FGCU-DPT program." (*See* Doc. 36 at ¶¶ 18-24, 29).  In that light, qualified immunity cannot be invoked in the first instance in this case on a motion to dismiss, and discovery concerning the job descriptions, duties, and responsibilities of the individual Defendants is needed.

Assuming, *arguendo*, that the Defendants acted within their discretionary authority, "[t]he burden then shifts to the plaintiff to overcome the defense of qualified immunity." *Case*, 555 F.3d at 1325 (citing *Bates*, 518 F.3d at 1242).  The threshold question here is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 1326 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the threshold question is answered in the affirmative, the court next asks "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general

proposition." *Id.* (quoting *Saucier*, 533 U.S. at 201). A trial court need not tackle this two-pronged inquiry in precisely that sequence, however. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 821 (2009)). For instance, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id.* (citing *Pearson*, 129 S. Ct. at 822).

As to the threshold question, the Court finds that the precise factual basis for Plaintiff's claims are hard to identify. Thus, a determination whether the Defendants' conduct violated a constitutional right is an issue better addressed on a complete record after the parties have had an opportunity to complete discovery and to submit the issue to the Court on a complete factual record.

As for the second prong, however, the question of qualified immunity should be resolved in the Defendants' favor on a motion to dismiss if Plaintiff fails to allege the violation of a clearly established constitutional right. *See Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (citing *Siegert v. Gilley*, 500 U.S. 226, 232-233 (1991)). Moreover, whether the Amended Complaint alleges a violation of a clearly established right is a question of law. *See id.* (citing *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991)).

To determine whether a right is clearly established, the Eleventh Circuit "uses two methods to determine whether a reasonable official would understand that his conduct violates a constitutional right." *Carollo v. Boria*, 833 F.3d 1322, 1333 (11th Cir. 2016) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1047 (11th Cir. 2015)). "The first asks whether 'binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed . . . gave [the defendant] fair warning that his treatment of [the plaintiff] was unconstitutional.'" *Id.* (quoting *Merricks v. Adkisson*, 785 F.3d 553, 559

(11th Cir. 2015); alterations in original).  "The second asks whether a public official's 'conduct lies so obviously at the very core of what [federal law] prohibits that the unlawfulness of the conduct was readily apparent to [the public official], notwithstanding the lack of fact-specific case law' on point."  *Id.* (quoting *Moore*, 806 F. 3d at 1047; alterations in original).

Here, the Court finds that the first method is the appropriate analysis to be employed in this case because it is not so obvious from the allegations of the Amended Complaint that Defendants' conduct violated the law notwithstanding the lack of fact-specific case law on point. *See id.*

Specifically, Defendants argue that Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Toll, Cordova, Glacken, Shamus, and Van Duijn for the alleged violation of substantive and procedural due process rights in Count I, (Doc. 36 at ¶¶ 4, 14), and against the same Defendants for the alleged violation of the right to free speech in Count II, (*id.* at ¶ 89), fail because "[n]either the United States Supreme Court, nor the Eleventh Circuit, nor the Florida Supreme Court have decided that a protected property interest exists in a student's post-secondary education at a public college." (Doc. 42 at 11-13).  Defendants contend, therefore, that the qualified immunity doctrine applies to immunize them from suit because Plaintiff cannot show that he suffered a violation of a constitutional right that was clearly established at the time of the challenged action.  (*Id.* at 12).

In response, Plaintiff appears to concede that "the Supreme Court has not explicitly ruled that there is an inherent and fundamental property interest in post-secondary education free from arbitrary and capricious action."  (Doc. 48 at 6).  Plaintiff argues instead that the Supreme Court, the Eleventh Circuit, and trial courts within the Eleventh Circuit have at least been willing to "assume" that such a right exists for some thirty years.  (*Id.* (citing *Regents of Univ. of Mich. v.*

*Ewing*, 474 U.S. 214, 222-223 (1985), *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 n.1 (11th

Cir. 1986), *Wright v. Chattahoochee Valley Cmty. Coll.*, No. 3:06-cv-1087-WKW, 2008 WL

4877948, at *9-10 (M.D. Ala. Nov. 12, 2008), and *Hamil v. Vertrees*, No. 98-D-508-N, 2001 WL

135716, at *9 (M.D. Ala. Jan. 10, 2001))).  Plaintiff infers and implies from these cases that he

has a clearly established right to post-secondary education in a state school.  (*Id.* at 6-7).[3]

This Court is not persuaded that the aforementioned cases are sufficient to show a clearly

established property interest in continuing a post-secondary education.  As the court in *Hamil v.*

*Vertrees*, persuasively stated:  "An assumption by the Supreme Court and the Eleventh Circuit

that individuals have a protected property right in their continuing post-secondary education is

not a holding.  An assumption is no more than dicta and, thus, cannot clearly establish the law

for purposes of qualified immunity."  2001 WL 135716, at *9.  This Court agrees with that

assessment.

However, Plaintiff also argues that he has a property interest in his ongoing enrollment at

FGCU based on the Eleventh Circuit's much more recent decision in *Barnes v. Zaccari*, 669 F.3d

1295, 1305 (11th Cir. 2012).  (Doc. 48 at 7).  In *Barnes*, the plaintiff was a student on academic

probation at a state university and was making sufficient academic progress to remain enrolled.

669 F.3d at 1298.  The university president "administratively withdrew" the plaintiff from the

university after plaintiff, *inter alia*, posted content to the plaintiff's own Facebook page that the

university president found to be threatening.  *Id.* at 1301.  Plaintiff brought a § 1983 claim

against the university president, alleging that the defendant violated the plaintiff's procedural due

process rights by failing to give due notice of the charges against him and a hearing before

---

[3]  Plaintiff does not cite to any relevant Florida Supreme Court decision clearly establishing such
a right.

removing plaintiff from the university.  *Id.* at 1302.  The university president moved to dismiss the claim based on qualified immunity.  *Id.*  The district court denied the motion.  *Id.*  Following discovery, the defendant moved for summary judgment asserting qualified immunity.  *Id.*  The district court denied summary judgment and the defendant appealed.  *Id.*

On appeal, the Eleventh Circuit held that the university's policy manual and code of conduct – both of which constituted official regulations under relevant state law – gave the student a legitimate claim of entitlement to continued enrollment at the university under state law because the manual and the code permitted the university to impose disciplinary sanctions only for cause.  *Id.* at 1304-1305.  The Court reasoned that "[a]n individual can have a protected property interest in a government benefit when he has 'a legitimate claim of entitlement to it.'"  *Id.* at 1303 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  "The claim of entitlement must come from an independent source."  *Id.*  "The independent source can be a statute, a regulation, an express or implied contract, or a mutually explicit understanding."  *Id.* (internal citations omitted).  The Court acknowledged that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"  *Id.* (string citation omitted).  "The independent source need not use the phrase 'for cause' so long as the parties understood their agreement would have that effect."  *Id.* (citing *Peterson v. Atl. Hous. Auth.*, 998 F.2d 904, 914 (11th Cir. 1993)).  Additionally, the Eleventh Circuit concluded for qualified immunity purposes that the plaintiff's entitlement to continued enrollment was clearly established at the time plaintiff was administratively withdrawn from the university in May 2007.  *Id.* at 1306-1308 (reviewing relevant Supreme Court authorities).  At least one subsequent Eleventh Circuit decision affirmatively acknowledged *Barnes* as holding that "a student at a publicly-funded college had procedural due process rights based on the board of regents' policy

manual and the school's code of conduct." *Rollins v. Bd. of Trs. of the Univ. of Ala.*, 647 F.

App'x 924, 930 (11th Cir. 2016).

Applying *Barnes* to the instant case, Plaintiff argues that his entitlement to post-

secondary education at FGCU is based in contract because he agreed to pay tuition and to abide

by the terms and conditions of the Student Guidebook in exchange for Defendants' agreement to

provide him with an education.  (Doc. 48 at 7).  Alternatively, Plaintiff argues that the Student

Guidebook "can be viewed as a regulation from which an entitlement is inferred" because "[t]he

regulation allows the FGCU-DPT to expel a student in the FGCU-DPT program only when the

student has violated the code of conduct outlined in the Guidebook."  (*Id* at 8).  Plaintiff

contends that until such time, he had a legitimate claim of entitlement to continued enrollment.

(*Id.*).

For present purposes, the Court agrees with Plaintiff that the allegations in Counts I and

II are sufficient to state a claim in light of the Eleventh Circuit's holding in *Barnes*.  Plaintiff

alleges that he had "clearly established property rights in his ongoing education."  (Doc. 36 at ¶¶

48, 94).  Plaintiff also alleges that "[t]he Student Guidebook is an official set of rules and

regulations adopted by Defendants for the conduct of students admitted to the FGCU-DPT

program."  (Doc. 36 at ¶ 58).  Plaintiff further alleges that "Participation as a student in the

FGCU-DPT program is contingent upon compliance with rules and regulations set forth in the

Student Guidebook."  (*Id.* at ¶ 59).  The Guidebook itself is attached as Exhibit C to the

Amended Complaint.  (Doc. 36-3).  The Guidebook contains language to the effect that students

are expected to conform to "professional behaviors" or else warns that dismissal can occur.  (*Id.*

at 5-6, 8).  Moreover, *Barnes* was decided in 2012 and stands for the proposition that the clearly

established property interest recognized in that case existed as of May 2007 based on the cited

Supreme Court precedent. *See* 669 F.3d at 1307. It stands to reason, therefore, that the same clearly established property interest existed as of 2015 when the conduct that gave rise to Plaintiff's dismissal in this case is alleged to have occurred. (*See* Doc. 36 at ¶¶ 24-44).

It warrants mention that Defendants filed a notice of supplemental authority (Doc. 60) bringing the recent decision of *Yeasin v. Durham*, No. 2:16-cv-02010-JAR, 2016 WL 7014027 (D. Kan. Dec. 1, 2016) to the Court's attention. However, the trial court in *Yeasin* does not appear to have considered the Eleventh Circuit's holding in *Barnes*. Because *Barnes* is controlling in the instant case and because the Court finds that *Barnes* requires a different result on the pending Motion to Dismiss, *Yeasin* is not persuasive.

Thus, the Court finds that qualified immunity does not immunize Defendants from suit at this time. Of course, Defendants are free to attempt to invoke qualified immunity again at the summary judgment phase of the case after the parties have had an opportunity to complete discovery and to re-submit the issue on a more thorough record. Notwithstanding the Court's conclusion *supra*, as explained in greater detail below, the Court will require Plaintiff to file a Second Amended Complaint to attempt to address other deficiencies. If filed, Plaintiff's Second Amended Complaint must – consistent with *Barnes* – also provide sufficient factual allegations in each applicable count supporting the Plaintiff's theory as to why the Defendants are not immune from suit via qualified immunity.

### 2.      Official-Capacity Money Damages Under § 1983 (Counts I-II)

Defendants argue that Plaintiff's claims in Counts I and II against FGCU and any individual defendants in their official capacities must be dismissed to the extent those claims are based on 42 U.S.C. § 1983 and purport to seek damages. (Doc. 42 at 14-15). Defendants correctly assert that "'[t]he plaintiff in a § 1983 civil rights action must show a deprivation of a

federal right by a person acting under color of state law.'"  (*Id.* at 14 (quoting *Carr v. Bd. of Regents of the Univ. Sys. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007))).  Defendants also correctly assert that "'[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought.'"  (*Id.* (quoting *Edwards v. Wallace Comm. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995))).

In response, Plaintiff appears to concede that money damages are not available under § 1983 insofar as Plaintiff sues any of the defendants in their official capacities.  (*See* Doc. 48 at 16).  Instead, Plaintiff points out that his Amended Complaint also sues for declaratory relief and prospective relief.  (*Id.* (citing Doc. 36 at p. 23-24, ¶¶ a-j, and p. 26-27, ¶¶ a-i)).  Plaintiff argues that he has sufficiently pled in which capacity(ies) each defendant was sued and he concedes that the failure to do so would otherwise be a "critical pleading defect."  (*Id.* (citing *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995)).

Upon consideration, the Court finds that Counts I and II of the Amended Complaint, as those counts are currently pled, conflate the allegations, claims, and relief requested against the Defendants in their individual capacities as opposed to their official capacities.  The Court will, therefore, require Plaintiff to further amend the Complaint to separate out claims brought against the Defendants in their individual capacities (for which monetary damages are sought) versus claims brought against any Defendants in their official capacities (for which prospective relief, including injunctive relief is sought).  The Court finds that requiring these claims to be re-pled in this manner will reduce the likelihood of confusion and will permit Defendants to evaluate how to respond to a Second Amended Complaint.

### 3.     Substantive Due Process (Count I)

Defendants argue that Plaintiff's substantive due process claim fails as a matter of law because Plaintiff has not alleged a violation of a fundamental constitutional right.  (Doc. 42 at 15).  For the reasons discussed *supra*, the Court finds that the allegations of the Amended Complaint when viewed under the Eleventh Circuit's holding in *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) are sufficient to state a claim based on a protected property interest. Even if *Barnes* did not require such a result here, at least one of the cases cited by Defendants supports the proposition that the Court can assume such a right exists for purposes of determining the sufficiency of a substantive due process claim on a motion to dismiss.  *See Hamil*, 2001 WL 135716, at *8.

Even assuming such a right exists, Defendants argue that their "academic decision" to dismiss Plaintiff in this case is entitled to great deference and cannot be overridden unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  (*Id.* at 15-16 (quoting with alterations *Ewing*, 474 U.S. at 224; emphasis omitted)).  Defendants contend that "Plaintiff has not and cannot allege sufficient facts to support the conclusion that FGCU's faculty members 'did not actually exercise professional judgment' in placing Plaintiff on Professional Behaviors Probations for the third time and in denying his series of appeals."  (Doc. 42 at 16).  Defendants also contend that Plaintiff fails "to allege sufficient facts showing there was 'arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or that the decision was motivated by bad faith or ill will unrelated to academic performance.'"  (*Id.* (quoting *Hamil*, 2001 WL 35716, at *7)).

In response, Plaintiff relies on a constellation of allegations and exhibits, not all of which appear in or are attached to the Amended Complaint, (*see* Doc. 48 at 17-18, 19-20), to dispute Defendants' arguments.  Plaintiff's attempted reliance on materials outside the Amended Complaint merely highlights to this Court the absence of sufficient *factual* allegations in the Amended Complaint – beyond threadbare recitals and conclusory statements – to overcome the defects highlighted by the Defendants.  The Court will, therefore, grant Defendants' Motion to Dismiss as to the substantive due process claim (Count I)[4] without prejudice to Plaintiff's ability to attempt to amend the claim to include sufficient *factual* allegations to address the pleading defects highlighted by Defendant—*e.g.*, (1) that his dismissal from the FGCU-DPT program was not an academic decision; (2) that the Defendants failed to exercise professional judgment such that their decision is not entitled to a heightened deference; (3) that there was arbitrary and capricious conduct by the Defendants; and (4) that there was no rational basis for Defendants' decision or that the decision was motivated by bad faith or ill will.

### 4.      Procedural Due Process (Count I)

Defendants argue that Plaintiff's procedural due process claim must be dismissed for two reasons.  First, Defendants contend that Plaintiff failed to seek sufficient and available state court relief, such as by filing a petition for certiorari review with the Circuit Court in and for Lee County, Florida.  (Doc. 42 at 17 (citing Fla. R. App. P. 9.100(c) and 9.190(b)(3) as providing for certiorari review of quasi-judicial actions of state agencies, boards, and commissions)).  Second, Defendants argue that no due process violation occurred because a public university's dismissal

---

[4]  Defendants request that the Court dismiss Counts I and II on this basis.  (Doc. 42 at 17).  However, Plaintiff's substantive due process claim only appears in Count I of the Amended Complaint.  (Doc. 36 at ¶¶ 57-83).  If Plaintiff intended to include a substantive due process claim as part of Count II as well, then the Court's holding as to Count I will apply equally to Plaintiff's re-pleading of Count II.

of a student on lack-of-professionalism grounds is an "academic judgment," not a disciplinary

one.  (*Id.* at 18).  Defendants maintain that "although the academic dismissal decision-making

process must be 'careful and deliberate," a formal hearing is in no way required."  (*Id.* at 19

(citing *Haberle*, 803 F.2d at 1539)).  Notwithstanding their contentions, Defendants conclude

that Plaintiff nevertheless "received adequate notice and multiple substantial opportunities to be

heard by the relevant decision-makers."  (Doc. 42 at 19).

In response, Plaintiff argues that state court judicial review would not provide an

adequate remedy for the procedural deprivation.  (Doc. 48 at 20-21).  To that end, Plaintiff states:

> As part of [Plaintiff's] claim, he alleges a claim under 42 U.S.C. § 1983, which
> imposes civil liability upon persons acting under color of state law who deprive
> individuals of rights guaranteed under the Constitution.  (Doc. #36 at ¶ 42)  This
> federal statute gives this Court subject matter jurisdiction over this matter.
> Furthermore, a main issue in this case is FGCU's violation of [Plaintiff's] right of
> free speech and expression under the First Amendment of the U.S. Constitution.
> These issues are not collateral to the claim of violation of procedural due process.
> Rather, these claims all arise from the same transaction or occurrence.

(*Id.*).  Plaintiff adds that, here, he is seeking declaratory relief *pursuant to* § 1983, as well as

money damages for violation of his substantive due process rights.  (*Id.* at 21).  Furthermore,

Plaintiff argues that the Amended Complaint adequately alleges a procedural due process claim

and draws a distinction between academic and disciplinary action on the part of FGCU.  (*Id.*

(citing Doc. 36 at ¶¶ 64-68)).

Upon review, the Court notes that "a procedural due process violation is not complete

unless and until the State fails to provide due process."  *McKinney v. Pate*, 20 F.3d 1550, 1556-

1557 (11th Cir. 1994) (quotation omitted).  "[T]he state may cure a procedural deprivation by

providing a later procedural remedy; only when the state refuses to provide a process sufficient

to remedy the procedural deprivation does a constitutional violation actionable under section

1983 arise."  *Id.*  A § 1983 claim for violation of procedural due process may be dismissed with

prejudice based on the Plaintiff's failure to seek state court judicial review with an insufficient explanation for the failure to do so.  *Hunt v. City of Mulberry*, 173 F. Supp. 2d 1288, 1293 (M.D. Fla. 2001).

Here, the Court finds that Plaintiff fails (1) to allege that he sought state court review or (2) sufficiently to explain why the available state-court relief would be inadequate.  Plaintiff cites no case law or other legal authority to support his apparent contention that available state court judicial review is inadequate under the circumstances presented here merely because § 1983 permits certain remedies.  As the Eleventh Circuit stated in *McKinney v. Pate*, it is "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  20 F.3d at 1557.  It is not necessary that the state's remedial procedure provide all relief available under § 1983.  *Id.* at 1564; *see also Ingalls v. U.S. Space and Rocket Ctr.*, No. 15-13797, 2017 WL 629258, at *7 (11th Cir. Feb. 16, 2017); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

To bolster this point, in a subsequent published opinion, the Eleventh Circuit explained in dicta that "the *McKinney* rule looks to the existence of an opportunity–to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered.  If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so."  *Horton v. Bd. of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).  Plaintiff does not allege that Florida state courts refused or otherwise lacked the power to remedy Plaintiff's alleged loss by granting both adequate monetary and equitable relief.  Therefore, Plaintiff fails to state a claim for a violation of

procedural due process and Count I must be dismissed with prejudice to the extent it includes such a claim.

Because the procedural due process claim in Count I is dismissed with prejudice on these grounds, the Court need not address Defendants' additional arguments that Plaintiff's dismissal was an "academic judgment" or that the process provided was actually sufficient.

### 5.    Violation of First Amendment Rights (Counts I-II)

Defendants argue that Plaintiff's claims in Counts I and II based on the First Amendment fail for an assortment of reasons.  (Doc. 42 at 20-24).  However, the Court finds that none of Defendants' arguments implicate a pleading defect or a failure by the Plaintiff to state a plausible claim for a First Amendment violation in the Amended Complaint.  (*See id.*).  Instead, each of Defendants' arguments highlight a variety of factual issues – all of which are plainly disputed by the Plaintiff at this stage of the litigation – that are more appropriately resolved after Plaintiff has had a chance to conduct discovery.  (*See id.*).

On review, Counts I and II of the Amended Complaint contain sufficiently detailed allegations to place Defendants on notice of Plaintiff's First Amendment Claims—*i.e.*, why Plaintiff alleges the provisions of the Student Guidebook are alleged to be unconstitutionally vague and/or overbroad, (Doc. 36 at ¶¶ 60-73), and why Defendants' conduct allegedly violated Plaintiff's First Amendment right to freedom of speech based on the content of that speech, (*id.* at ¶¶ 84-97).  As such, Defendants' Motion to Dismiss Counts I and II on these grounds is denied.

### 6.    Defamation (Count III)

Under Florida law, a claim for defamation of a private person has five elements:  (1) publication to a third party; (2) a false statement; (3) fault, amounting to at least negligence, in

the making of the publication; (4) actual damages; and (5) a defamatory statement.  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  However, "a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable."  *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)).  If a statement is privileged, then Plaintiff must plead express malice to proceed with a defamation claim.  *Id.* Express malice has been defined as "'ill will, hostility and an evil intention to defame and injure.'"  *Id.* (quoting *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2d Dist. Ct. App. 1981); emphasis omitted).  "'[T]he gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker.'"  *Id.* (quoting *Nodar*, 462 So. 2d at 811, n.8).

The Amended Complaint describes three discrete instances of alleged defamation:  (1) the February 20, 2015 letter from Van Duijn to Plaintiff concerning Plaintiff's dismissal; (2) Van Duijn's statements in the meeting between Plaintiff, Van Duijn, Shamus, and Black; and (3) the holding of Title IX sexual discrimination and harassment training immediately after Plaintiff's dismissal.  (Doc. 36 at ¶¶ 99-101).  Plaintiff alleges that these purported statements "were made negligently because [Plaintiff] was in fact never involved in the verbal, physical, emotional, or sexual harassment of any person."  (*Id.* at ¶ 103).

With regard to the February 20, 2015 letter and Van Duijn's statements during the meeting with Plaintiff, the Amended Complaint unquestionably places these statements in the context of Defendants' investigation into and response to the Facebook post at issue in this litigation.  (*See* Doc. 36 at ¶¶ 32-34, 38; *see also* Doc. 36-1).  As such, these statements must be deemed privileged as a matter of law and Plaintiff is required to plead express malice to survive

a motion to dismiss.  *See Jarzynka*, 310 F. Supp. 2d at 1268.  Count III contains no allegation of express malice.  (*See* Doc. 36 at ¶¶ 98-105).[5]  Plaintiff alleges only that "[t]hese statements were made negligently."  (*Id.* at ¶ 103).  That is not enough to survive a motion to dismiss.  *Jarzynka*, 310 F. Supp. 2d at 1268.  As important, the Amended Complaint fails to allege any facts supporting an improper motivation on the part of Van Duijn with regard to the statements in the February 20, 2015 letter or any statements made during the meeting between Plaintiff, Van Duijn, Shamus, and Black.  (*See* Doc. 36 at ¶¶ 98-105).  Accordingly, Count III must be dismissed for failure to allege express malice.  This dismissal is, however, without prejudice to Plaintiff's ability to attempt to amend Count III to include sufficient allegations of malice in order to state a plausible claim for defamation.

Additionally, Plaintiff's defamation claim premised on the Title IX sexual discrimination and harassment training given to his classmates fails as a matter of pleading.  Plaintiff concedes in the Amended Complaint that he was not specifically named in the training.  (Doc. 36 ¶ 40).  Under Florida law, an allegedly defamatory statement must be made "concerning another."  *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803-804 (Fla. 1st Dist. Ct. App. 1997).  Plaintiff does not allege or otherwise explain how the convening of a training session in and of itself without a specific statement about him constitutes a false statement *concerning Plaintiff* in the first instance, or how it constitutes publication to a third party or a defamatory statement

---

[5]  The Court notes that the Amended Complaint contains conclusory allegations of "malice" and "malicious" conduct in the "Allegations of Law" section at Paragraph 53, in Count I at Paragraph 72, in Count II at Paragraph 96, and in the Wherefore clauses of Counts I and II.  (*See* Doc. 36 at ¶¶ 53, 72, 96 and pp. 24, 27).  However, no such allegation appears in or is incorporated by reference in the actual defamation claim in Count III.  (*See id.* at ¶¶ 98-105).  Additionally, Plaintiff's conclusory allegations of recklessness, (*see id.* at ¶¶ 13, 34, 53, 72, 96), are insufficient.  None of these allegations appear in or are incorporated by reference in Count III, (*see id.* at ¶¶ 98-105), and even if they were, they do not amount to pleading that Van Duijn acted with express malice.  *See Jarzynka*, 310 F. Supp. 2d at 1268.

sufficient to state the elements of a plausible defamation claim under Florida law. *See id.*; *see also Rapp*, 997 So. 2d at 1106. Thus, Count III is due to be dismissed for failure to state a claim to the extent it is premised on the Title IX training Defendants provided after Plaintiff's dismissal from the FGCU-DPT program.

The Court declines to address Defendants' remaining challenges to Count III (*see* Doc. 42 at 25) until the parties have completed discovery and the issues can be considered on a fully developed factual record.

**B.     Defendants' Alternative Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 12(d) and 56**

Defendants also request in the alternative that the Court grant summary judgment in their favor as to all Counts of the Complaint pursuant to Fed. R. Civ. P. 56. (Doc. 42 at 1, 13, 15, 17, 19, 24, 25). As a threshold matter, Defendants' request is not made entirely in the alternative. By invoking Fed. R. Civ. P. 12(d) and relying on matters outside the pleadings, Defendants also impliedly request that the Court *convert* their motion to dismiss to one for summary judgment under Fed. R. Civ. P. 56. (*Id.* at 11). In any event, the Court finds that Defendants' alternative motion is premature at this stage in the proceedings.

As stated above, "'[w]hile the Court may convert a motion to dismiss to a motion for summary judgment and consider matters submitted outside the pleadings, the decision to do so is within the Court's discretion.'" *Muller*, 2015 WL 4770803, at *2 (quoting *Dawkins*, 2005 WL 3054054, at *2). Moreover, "'[a]s a general rule[,] summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery.'" *Id.* (quoting *Reflectone*, 862 F.2d at 843).

Although this case has been pending for some time while the Court took the Motion *sub judice* under advisement, it does not appear that there has been much, if any, progress in this case

in the interim or that any significant discovery has occurred.  For all intents and purposes, therefore, this case is still in an early, insufficiently developed stage and it was certainly at an early stage at the time Defendants' Motion was filed.  Therefore, the Court declines to consider Defendants' alternative motion for summary judgment or to convert the motion to dismiss to one for summary judgment until after Plaintiff has an adequate opportunity to conduct discovery. *See id.*; *see also Romano*, 2014 WL 103171, at *6.

## IV.   CONCLUSION

In light of the foregoing, it is hereby **ORDERED** and **ADJUDGED**:

1)   Defendants' Omnibus Motion to Dismiss Plaintiff's Amended Complaint, and Alternative Motion for Summary Final Judgment (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

2)   Count I is dismissed with prejudice to the extent that count contains a procedural due process claim.  Otherwise, Counts I, II, and III are each dismissed without prejudice to Plaintiff's ability to attempt to re-plead those counts consistent with this Order.

3)   If Plaintiff intends to file a Second Amended Complaint, he must do so **on or before April 28, 2017**.

4)   All previously set case management deadlines in this case, including the trial, are hereby **HELD IN ABEYANCE**.

5)   If Plaintiff files a Second Amended Complaint, the parties shall file an amended Case Management Report **on or before May 12, 2017** proposing adjusted case management deadlines that take into account the current posture of this case, including but not limited to any need to complete discovery.

**DONE** and **ORDERED** in Fort Myers, Florida on March 31, 2017.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties