UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CODY K. CHILDERS,

      Plaintiff,

v.                                                                    Case No:   2:15-cv-722-FtM-MRM

FLORIDA GULF COAST UNIVERSITY
BOARD OF TRUSTEES, RONALD B.
TOLL, MITCHELL L. CORDOVA, JOAN
GLACKEN, ERIC SHAMUS and ARIE
VAN DUIJN,

      Defendants.

_____/

**OPINION AND ORDER**

Pending before the Court are Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint (Doc. 76) filed on June 9, 2017 and Plaintiff's response in opposition thereto (Doc.

79) filed on July 17, 2017.  This matter is ripe for review.  For the reasons set forth in this

Opinion and Order, Defendants' Motion (Doc. 76) is **GRANTED IN PART** and **DENIED IN**

**PART**.

## I.    PROCEDURAL HISTORY

Previously, on April 5, 2016, Defendants moved to dismiss Plaintiff's Amended

Complaint or, in the alternative, for summary judgment.  (Doc. 42).  On March 31, 2017, the

Court granted in part and denied in part Defendants' Motion.  (Doc. 61 at 28).  In doing so, the

Court dismissed with prejudice Plaintiff's procedural due process claim.  (*Id.*).  In addition, the

Court dismissed the remainder of Plaintiff's Amended Complaint without prejudice to Plaintiff's

ability to attempt to re-plead his claims consistent with the Court's March 31, 2017 Opinion and

Order.  (*Id.*).

Plaintiff filed a Second Amended Complaint (Doc. 67) on May 8, 2017, asserting twelve counts and attempting to correct the pleading deficiencies highlighted by Defendants and the Court. In response, Defendants' moved to dismiss the Second Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 76 at 1).

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Conclusory allegations and legal conclusions are not entitled to a presumption of truth, however. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Under Fed. R. Civ. P. 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

## III.   ANALYSIS

Defendants argue that the Amended Complaint must be dismissed in its entirety for four reasons.[1]  First, Defendants argue that Counts VII through XII should be dismissed because Plaintiff has no plausible First Amendment claims.  (Doc. 76 at 7-12).  Second, Defendants argue that Counts I through VI should be dismissed because Plaintiff has no plausible substantive due process claims.  (*Id.* at 12-17).  Third, the individual Defendants argue that Counts II-VI and VII-XII should be dismissed against them because qualified immunity protects them in their individual capacities.  (*Id.* at 18-23).  Finally, Defendant Florida Gulf Coast University Board of Trustees ("FGCU") argues that Counts I and VII should be dismissed against it with prejudice because FGCU is not a "person" for purposes of 42 U.S.C. § 1983 ("§ 1983").  (*Id.* at 24).  The Court addresses Defendants' arguments in turn below.

### A.   First Amendment (Counts VII-XII)

Defendants argue that Plaintiff has no viable First Amendment claims.  (*Id.* at 7-12).  Specifically, Defendants first argue that Plaintiff cannot show that his admittedly vulgar communication to his classmates was protected speech under the First Amendment.  (*Id.* at 7-10).  Second, Defendants argue that, even assuming Plaintiff's speech was protected under the First Amendment, "FGCU has a 'compelling interest in proscribing conduct that affects its students, their safety, and their ability to learn in a safe and secure environment.'"  (*Id.* at 10).  Defendants argue that "FGCU's interest in protecting its students and its on-campus learning environment outweighs any First Amendment protections that Childers claims he has in sending vulgarities to his classmates, and therefore FGCU's regulation of Childers' speech in this case

---

[1]  The Court's March 31, 2017 Opinion and Order (Doc. 61) provided a lengthy recitation of the facts alleged by Plaintiff.  Rather than repeat Plaintiff's allegations here, the Court only addresses Defendants' specific arguments in support of dismissal.

survives scrutiny under the First Amendment." (*Id.* (citation omitted)). Third, Defendants argue that "a university may limit or discipline student expression if school officials 'reasonably conclude that it will materially and substantially disrupt the work and discipline of the school.'" (*Id.* at 11 (citing *Morse v. Frederick*, 551 U.S. 393, 403 (2007), which in turn quotes *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969))). Defendants argue that they "reasonably concluded that Childers' demonstrated lack of professionalism would materially and substantially disrupt the work and discipline of [the] FGCU DPT program." (*Id.*).[2] For these reasons, Defendants request that the Court "render judgment as a matter of law in their favor on Counts VII through XII because Childers' alleged free speech claims fail to cross 'the line from conceivable to plausible.'" (*Id.* at 12 (emphasis added; citing *Iqbal*, 556 U.S. at 680)).

As an initial matter, in addressing Defendants' prior Motion to Dismiss, the Court previously found that "none of Defendants' arguments implicated a pleading defect or a failure by the Plaintiff to state a plausible claim for a First Amendment violation in the Amended Complaint." (Doc. 61 at 24). Instead, the Court found that "each of Defendants' arguments highlight a variety of factual issues – all of which are plainly disputed by the Plaintiff at this stage of the litigation – that are more appropriately resolved after Plaintiff has had a chance to conduct discovery." (*Id.*). In reviewing the current Motion, although Defendants set forth different arguments, the Court again finds that Defendants have not addressed a pleading defect or a failure by the Plaintiff to state a plausible claim for a First Amendment violation. Instead, Defendants have again raised a variety of factual issues – ones plainly disputed by Plaintiff – that are more appropriately resolved at a later stage of the proceedings.

---

[2] FGCU-DPT is an acronym for the Florida Gulf Coast University Doctor of Physical Therapy program.

For instance, Defendants' first argument is that Plaintiff cannot show that his admittedly vulgar communication to his classmates was protected speech under the First Amendment. (*Id.* at 7-10). In support, Defendants cite a recent decision by this Court, *Koeppel v. Romano*, for the proposition that Plaintiff's communication "is exactly the kind of speech" that is not protected by the constitution. *See* 252 F. Supp. 3d 1310 (M.D. Fla. 2017) (citations omitted). Upon review, however, the *Koeppel* decision is distinguishable from the current action both procedurally and factually.

In *Koeppel*, the Court granted the defendants' motion for summary judgment and denied the plaintiff's motion for summary judgment. *Id.* at 1314. There, the plaintiff – a 42-year-old male nursing student attending a Florida public community college – was suspended for violations of the school's code of conduct for various intimidating, hostile, offensive, and threatening messages he directed at a female student. *Id.* at 1314-17. The Court found that the plaintiff's intimidating, hostile, offensive, and threatening speech directed toward another student was not protected, whether on-campus or off-campus, "because it disrupt[ed] another student's ability to pursue her education in a safe environment." *Id.* at 1324. In finding that the plaintiff's speech was not protected, the Court specifically noted that the plaintiff had "not been charged with posting offensive speech on the internet" but was instead "disciplined for harassing a fellow student by sending a barrage of inappropriate, sexual, and threating text messages." *Id.*

The present action differs in two critical respects. First, procedurally, the Court in *Koeppel* was evaluating the parties' arguments on motions for summary judgment. *Id.* at 1314. Unlike the current action, therefore, which is still at the pleading stage, the Court in *Koeppel* was making factual and legal determinations on a more developed record. *See id.*

Second, *Koeppel* is factually dissimilar to the present case. Specifically, the Court in *Koeppel* noted that the plaintiff was not punished for offensive speech posted on the internet but, instead, was disciplined for the threating and offensive messages he *directed at* another student that disrupted the student's ability to pursue her education in a safe environment. *Id.* at 1324. In contrast, here, Plaintiff's Second Amended Complaint alleges that his "joke" was not directed at any student but, instead, was conditioned on a students' voluntary click to view the joke. (Doc. 67 at ¶ 204). Plaintiff further alleges that he provided a warning that the joke may be offensive. (*Id.* at ¶ 205). The Second Amended Complaint also alleges that the joke was off-campus and was not substantially disruptive of other students' abilities to pursue an education in a safe environment. (*See, e.g.*, *id.* at ¶¶ 210-13). Based on these key factual differences, *Koeppel* is inapposite to the present case at the motion to dismiss stage. Defendants' reliance on *Koeppel* is, therefore, unpersuasive at this stage of the litigation.

Although Defendants are correct that certain types of speech are not protected by the constitution, *see Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-72 (1942),[3] Defendants have not shown – at this stage of the proceedings – that Plaintiff's joke was unprotected speech. For present purposes, the Court finds that Plaintiff's Second Amended

---

[3] The Supreme Court stated:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky*, 315 U.S. at 571-72.

Complaint contains sufficiently detailed factual allegations to place Defendants on notice as to why Defendants' conduct allegedly violated Plaintiff's First Amendment right to freedom of speech. (*See, e.g.*, Doc. 67 at ¶ 209).

Turning to Defendants' other two arguments – (1) that FGCU's interest in protecting its students and its on-campus learning environment outweighs any First Amendment protections Plaintiff may have and (2) that FGCU may properly limit or discipline student expression if school officials "reasonably conclude that it will materially and substantially disrupt the work and discipline of the school" – the Court finds that these arguments plainly rest on disputed factual matters that cannot be resolved in the absence of a more developed record. Assuming Plaintiff's well-pled allegations are true and considering them in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated plausible First Amendment claims. Defendants' Motion to Dismiss is denied on this ground.

### B.  Substantive Due Process (Counts I-VI)

Next, Defendants argue that that Counts I through VI should be dismissed because Plaintiff has no plausible substantive due process claims. (Doc. 76 at 12-17). In making this argument, Defendants argue – as they did in their previous motion to dismiss – that Plaintiff's substantive due process claims fail because Plaintiff does not have a constitutional right to attend FGCU. (*Id.* at 13). Additionally, Defendants argue that the Court's reliance on *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012), in the March 31, 2017 Opinion and Order is misplaced as to Plaintiff's substantive due process claims. (*Id.* at 14-15). Defendants contend that *Barnes* only dealt with a protected interest on a procedural due process claim rather than a fundamental constitutional right as is required in substantive due process claims. (*Id.*). As a final matter, Defendants argue that, regardless of any constitutional right, Plaintiff's Second

Amended Complaint fails to adequately address the other pleading defects previously highlighted by Defendants because it does not provide sufficient factual allegations in support of Plaintiff's claims. (*See id.* at 15-16).

In response, Plaintiff contends that Defendants' arguments are undermined by their citation to the *Koeppel* decision in support of their First Amendment arguments. (Doc. 79 at 10). Plaintiff points out that the Court in *Koeppel* indicated that, even in the absence of a fundamental constitutional right to continuing education, "a number of courts that have found that academic suspensions from state institutions can rise to a substantive due process violation if the actions of the state institution can be 'shown to be clearly arbitrary or capricious.'" (*Id.* (citing *Koeppel*, 252 F. Supp. 3d at 1321, which in turn cites *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91 (1978))). Here, Plaintiff argues that he has alleged sufficient facts showing that his dismissal from FGCU was the result of clearly arbitrary or capricious actions. (*Id.*).

Specifically, Plaintiff contends that his allegations show that Defendants Van Duijn, Shamus, and Black took arbitrary and capricious actions because they "were under the misbelief that Cody posted his joke to the official FGCU-DPT Facebook page when they first met with him and told him they were putting him on professional behavior probation" meaning that "these Defendants did not take the time to get their facts straight before taking action against Cody." (*Id.* (citing Doc 67 at ¶ 39)). Similarly, Plaintiff maintains that his allegations that "Defendants Shamus and Van Duijn were under the misbelief that Cody's speech amounted to 'harassment' and acted upon this misbelief" is "arbitrary and capricious, rather than rational." (*Id.* at 10-11 (citing (Doc 67 at ¶¶ 45, 241, 247)). Moreover, Plaintiff contends that "dismissing a student for a private Facebook post that threatens no one is an obvious departure from academic norms and

cannot be rational." (*Id.* at 11). Thus, Plaintiff argues that his Second Amended Complaint should "survive a motion to dismiss on his substantive due process claims." (*Id.*).

Upon consideration, the Court declines to revisit its conclusions from the March 31, 2017 Opinion and Order (Doc. 61) at this time as to Plaintiff's substantive due process claims.

First, in reviewing this issue, the Court notes that the substantive component of the Due Process Clause "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). This Court has stated that "substantive due process rights are created only by the Constitution." *Koeppel*, 252 F. Supp. 3d at 1321 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J. concurring)). Although Defendants contend that Plaintiff has not pled any fundamental constitutional right and that *Barnes* does not control, the Court finds – as it indicated previously – that even if *Barnes* does not establish that Plaintiff has a fundamental constitutional right to continuing his post-secondary education, the Court can assume such a right exists for purposes of determining the sufficiency of a substantive due process claim on a motion to dismiss. *See Hamil v. Vertrees*, No. CIV. A. 98-D-508-N, 2001 WL 135716, at *8 (M.D. Ala. Jan. 10, 2001). Here, the Court assumes such a right exists at this stage of the proceedings.

Furthermore, as pointed out by Plaintiff and discussed above, the case law suggests that – even if there is no constitutional right to continuing education – academic suspensions from state institutions may give rise to substantive due process violations if the actions of the state institution are "clearly arbitrary or capricious." *Koeppel*, 252 F. Supp. 3d at 1321 (citing *Horowitz*, 435 U.S. at 91). Here, Plaintiff's Second Amended Complaint sufficiently alleges that

his dismissal from the physical therapy program was the result of arbitrary and capricious actions by Defendants.

On this point, the Court notes that it previously directed Plaintiff to provide sufficient factual allegations in any subsequent Amended Complaint – beyond threadbare recitals and conclusory statements – to overcome the defects highlighted by the Defendants. (Doc. 61 at 21). The Court specifically directed Plaintiff to provide factual allegations demonstrating (1) that his dismissal from the FGCU-DPT program was not an academic decision; (2) that the Defendants failed to exercise professional judgment such that their decision is not entitled to a heightened deference; (3) that there was arbitrary and capricious conduct by the Defendants; and (4) that there was no rational basis for Defendants' decision or that the decision was motivated by bad faith or ill will. (*Id.*). Upon consideration of the Second Amended Complaint, taking Plaintiff's allegations as true and construed in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently re-pled factual allegations addressing each of the issues highlighted by Defendant. The Court, therefore, finds that Defendants' Motion to Dismiss is due to be denied on this ground.

### C.     Qualified Immunity (Counts II-VI and VII-XII)

As argued previously, the individual Defendants maintain that qualified immunity protects them in their individual capacities. (Doc. 76 at 18-23). In continuing to seek this relief, Defendants acknowledge that the Court, in ruling on their prior motion to dismiss, found that Plaintiff's allegations "taken as true and construed in the light most favorable to Plaintiff, sufficiently allege that the act of monitoring the private Facebook page at issue is not within the individual Defendants' discretionary authority except, perhaps, in limited circumstances where 'a student used Facebook for a purpose that posed a threat to the welfare of faculty, students, or

patients in the FGCU-DPT program.'" (*Id.* at 19 (citing Doc. 61 at 12)). In their present motion, however, Defendants argue that "[t]here has been a material change . . . in Childers' Second Amended Complaint" because it attaches a "student's 'Information and Incident Report' reporting Childers to FGCU's Office of Student Conduct for being 'extremely offensive, insulting and humiliating' to women." (*Id.* (citing Doc. 67-7 at 1-3)). Thus, Defendants argue that "[r]ather than 'monitoring' or 'policing' a social media page, the Individual Defendants responded to a student reported incident and proceeded accordingly." (*Id.* at 20).

The Court rejects Defendants' argument that there has been a material change at this stage of the proceedings in the Second Amended Complaint. Although the attachment of the report may show that Defendants were responding to an alleged incident, the report does not definitively demonstrate that the individual Defendants were acting within the scope of their discretionary authority. To the contrary, Plaintiff's Second Amended Complaint includes affirmative allegations as to each individual Defendant that he or she acted outside of his or her discretionary authority in responding to Plaintiff's Facebook post on the private Facebook page at issue. At this stage of the proceedings, taking Plaintiff's allegations as true and construed in the light most favorable to Plaintiff, the Court finds that Plaintiff's Second Amended Complaint sets forth sufficient factual allegations showing that each of the individual Defendants acted outside of his or her discretionary authority in monitoring the private Facebook page at issue. Thus, the Court again finds that qualified immunity does not immunize Defendants from suit at this time. As the Court stated previously, however, Defendants are free to attempt to invoke qualified immunity again at the summary judgment phase of the case *after* the parties have had an opportunity to complete discovery and to re-submit the issue on a more thorough record. The individual Defendants' Motion to Dismiss is denied on this ground.

**D. § 1983 Claims Against FGCU (Counts I and VII)**

FGCU argues that Plaintiff's § 1983 claims against it in Counts I and VII must be dismissed with prejudice because FGCU is not a "person" for purposes of § 1983. (Doc. 76 at 24 (citing *Paylan v. Teitelbaum*, No. 1:15-cv-159-MW-GRJ, 2017 WL 2294084, at *3 n.1 (N.D. Fla. May 23, 2017), *report and recommendation adopted*, No. 1:15-cv-159-MW-GRJ, 2017 WL 2294083 (N.D. Fla. May 25, 2017), *appeal dismissed*, No. 17-12960-A, 2017 WL 6760757 (11th Cir. Oct. 3, 2017))).

In response, Plaintiff argues that "[t]he prohibition against suing a state under 42 U.S.C. [§] 1983 seems to be based on the Eleventh Amendment." (Doc. 79 at 15 (citing *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496 (1982); *Edelman v. Jordan*, 415 U.S. 651, 676 (1974)). Plaintiff contends that because "FGCU has already acknowledged that it has waived any defense it might have under the Eleventh Amendment . . . it's the Plaintiff's belief that the Defendant FGCU may be sued in this case for money damages under 42 U.S.C. § 1983." (*Id.*).

In reviewing this issue, the United States Supreme Court has indicated that the scope of Eleventh Amendment and the scope of § 1983 are separate and distinct issues. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Specifically, "[t]he Eleventh Amendment provides that the 'Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States' by citizens of another State . . . and (as interpreted) by its own citizens." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 (1890)). Nevertheless, while the Eleventh Amendment immunizes states from suits in federal court, states remain free to waive their Eleventh Amendment immunity. *Id.*

Although a state may waive its immunity from suit in federal court, this does not mean that § 1983 permits claims against states in the first instance. *See Will*, 491 U.S. at 66. On this point, the Supreme Court has expressly held that "neither a *State* nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71 (emphasis added). In coming to this conclusion, the Supreme Court noted that "a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims." *Id.* at 66. Nonetheless, in enacting § 1983, the Court found that Congress did not "provide a federal forum for litigants who seek a remedy against a *State* for alleged deprivations of civil liberties." *Id.* (emphasis added).

In reviewing Plaintiff's argument against dismissal on this ground, Plaintiff conflates the issue of whether FGCU has waived its Eleventh Amendment immunity with whether Plaintiff has stated a plausible claim against FGCU under § 1983. While FGCU has waived its Eleventh Amendment immunity, (*see* Doc. 42 at 14 n.2), Plaintiff has not stated a claim against FGCU because FGCU is not a "person" pursuant to § 1983. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

Specifically, "[i]n order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a *person* acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (emphasis added). Nonetheless, neither a state nor a state agency are "persons" within the meaning of § 1983. *Edwards*, 49 F.3d at 1524 (citing *Will*, 491 U.S. at 71).[4] In Florida, the Boards of Trustees of

---

[4] Of note, the Supreme Court and the Eleventh Circuit have indicated that a state official sued in his or her official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought. *Will*, 491 U.S. at 71 n.10; *Edwards*, 49 F.3d at 1524. Monetary damages, however, are unavailable to litigants suing officials in their official capacities. *Edwards*, 49 F.3d at 1524. In this regard, it is telling that Defendants did not seek dismissal of Counts I and VII against the individual Defendants sued in their official capacities. Instead, these Defendants appear to be persons within the meaning of § 1983 because they were sued in

state universities are state agencies under Florida law. *See Paylan*, 2017 WL 2294084, at \*2; *Saavedra v. USF Bd. of Trs.*, No. 8:10-cv-1935-T-17TGW, 2011 WL 1742018, at \*3 (M.D. Fla. May 6, 2011). Accordingly, because the FGCU Board of Trustees is a state agency, it is not a person within the meaning of § 1983. *See Edwards*, 49 F.3d at 1524. Further, because FGCU is not a person within the meaning of § 1983, Plaintiff has not stated a claim against FGCU in Count I or Count VII. *See id.* Moreover, because § 1983 does not provide a federal forum for such claims against FGCU, *see Will*, 491 U.S. at 66, the Court finds that Plaintiff's claims against FGCU in Counts I and VII are due to be dismissed with prejudice. Defendants' Motion is, therefore, granted on this ground.

## IV.   CONCLUSION

In light of the foregoing, it is hereby **ORDERED** and **ADJUDGED**:

1)   Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 67) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

2)   Counts I and VII are dismissed with prejudice against the Florida Gulf Coast University Board of Trustees.

3)   The remaining Defendants must file any answer(s) **on or before February 13, 2018**.

---

their official capacities and because it appears Plaintiff only sought prospective relief, not monetary damages, as to these Defendants. *See Will*, 491 U.S. at 71 n.10; *Edwards*, 49 F.3d at 1524.

**DONE** and **ORDERED** in Fort Myers, Florida on January 30, 2018.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties